**In the Matter of KRAFFT–MURPHY COMPANY, INC., A Dissolved Delaware Corporation**

**Robert F. Anderson, et al., Petitioners/Intervenors Below, Appellants,**

v.

**Krafft–Murphy Company, Inc., Respondent Below, Appellee.**

No. 85, 2013.

Supreme Court of Delaware.

Submitted: Aug. 21, 2013.
Decided: Nov. 26, 2013.

Raeann Warner and Jordan J. Perry, Esquires, Jacobs & Crumplar, P.A., Wilmington, Delaware; Jeffrey P. Wasserman, Esquire, Ciconte, Wasserman & Scerba, LLC, Wilmington, Delaware; Of Counsel: Jennifer L. Lilly, Esquire (argued), The Law Offices of Peter G. Angelos, P.C., Baltimore, Maryland; Daniel A. Brown and Eileen M. O'Brien, Esquires, Brown & Gould, LLP, Bethesda, Maryland, for Appellants.

Francis J. Murphy, Esquire, Murphy & Landon, Wilmington, Delaware; Of Counsel: Joseph L. Ruby, Esquire (argued), Lewis Baach PLLC, Washington, DC, for Appellee.

Before STEELE, Chief Justice, HOLLAND, BERGER, JACOBS, and, RIDGELY, Justices, constituting the Court en Banc.

JACOBS, Justice:

## I. INTRODUCTION

This is an appeal from a judgment of the Court of Chancery in an action to appoint a receiver for Krafft–Murphy Company, Inc. (the "Corporation"), a dissolved Delaware corporation, under 8 *Del. C.* § 279. The Petitioners–Below/Appellants, who are tort claimants in lawsuits pending against the Corporation in other jurisdictions, seek the appointment of a receiver to enable them lawfully to pursue those claims against the Corporation in those other courts. The Corporation (as Respondent–Below/Appellee) argues that because it holds no assets other than unexhausted liability insurance policies, Delaware law does not authorize the appointment of a receiver and that, in any event, it is not necessary to appoint one. The Court of Chancery granted summary judgment in favor of the Corporation. The Petitioners timely appealed.

The case raises two interrelated questions of first impression in this Court, plus a third question directly addressed by settled Delaware law. First, does a contingent contractual right, such as an insurance policy, constitute "property" within the meaning of 8 *Del. C.* § 279? Second, does Delaware's statutory corporate dissolution scheme (8 *Del. C.* §§ 278–282) contain a generally applicable statute of limitations that time-bars claims against a dissolved corporation by third parties after the limitations period expires? Third, after 8 *Del. C.* § 278's three year winding-up period expires, does a dissolved corporation have the power to act absent a court-appointed receiver or trustee?

We conclude that under 8 *Del. C.* § 279, contingent contractual rights, such as unexhausted insurance policies, constitute "property" of a dissolved corporation, so long as those rights are capable of vesting. We further hold that Delaware's dissolution statutes impose no generally applicable statute of limitations that would time-bar claims against a dissolved corporation by third parties. Finally, we hold that the existence of the "body corporate" continues beyond the expiration of the statutory winding-up period of 8 *Del. C.* § 278 for purposes of conducting litigation commenced before the expiration of that period. But, for litigation commenced after the expiration of that statutory period, a dissolved corporation may act only through a receiver or trustee appointed under 8 *Del. C.* § 279.

Because the judgment of the Court of Chancery rests on legal determinations inconsistent with these holdings, we reverse the judgment and remand the case for further proceedings in accordance with this Opinion.

## II. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

### A. The Parties

The Corporation is a dissolved Delaware corporation that, before its dissolution in 1999, engaged in the plastering business in the Washington, D.C. metropolitan area. Beginning in 1989, the Corporation was named as a defendant in hundreds of asbestos-related personal injury lawsuits. The Corporation's defense both in this Delaware proceeding, and in the personal injury lawsuits in other jurisdictions, is being funded and directed by the Corporation's liability insurers in accordance with the applicable insurance policies.

The original Petitioners–Below, who are asbestos claimants represented by a Baltimore, Maryland law firm, have asbestos-related personal injury claims pending against the Corporation in other jurisdictions. During the Court of Chancery proceedings in this case, other tort claimants, represented by a different law firm, were permitted to intervene. The original Petitioners–Below and the Intervenors–Below are referred to collectively as "Petitioners."

### B. Facts

The material facts are not disputed. The Corporation was formed in Delaware in 1952. Although the Corporation was primarily a plastering company, it also supplied and installed Sprayed Limpet Asbestos, an asbestos-containing product. That activity exposed the Corporation to significant liability risk, and ultimately caused it to be named as a defendant in hundreds of asbestos-related lawsuits.

While it was fully operational, the Corporation obtained primary liability insurance from various insurance companies, including Travelers Casualty and Surety Company, CNA Insurance Company, and

Great American Insurance Company (collectively, the "Insurers"). The applicable insurance policies obligate the Insurers to defend the Corporation in suits for damages covered by the policies, and also to indemnify the Corporation against covered third party claims. The coverage available under those insurance policies has not been exhausted.

The Corporation ceased operations in 1991, and in 1999 it formally dissolved, pursuant to 8 *Del. C.* § 275. The Corporation did not elect to notify creditors of its dissolution under the procedure set forth in 8 *Del. C.* § 280. Nor did the Corporation make any provisions for claims of future creditors and claimants, utilizing the procedure set forth in 8 *Del. C.* § 281(b). All parties agree that the Corporation's only assets are its unexhausted insurance policies.

### C. The Asbestos Proceedings and the § 279 Petition

In 2010, the Corporation began filing motions in other courts to dismiss asbestos-related claims commenced more than ten years after its dissolution.[1] The underlying basis of those motions was that because the Corporation has been dissolved for more than three years, it is no longer amenable to suit as a matter of Delaware law.[2]

The Petitioners responded to those motions to dismiss by (*inter alia*) filing, in the Court of Chancery, a verified petition for the appointment of a receiver for a dissolved corporation under 8 *Del. C.* § 279. The Corporation moved to dismiss

the Petition on grounds of insufficient service of process and failure to state a claim upon which relief can be granted. On November 9, 2011, the Court of Chancery granted the Petitioners' motion to perfect service of process and denied the Corporation's motion to dismiss.[3]

On August 1, 2012, the Corporation moved for summary judgment. In response, the Petitioners moved for judgment on the pleadings. By Opinion dated February 4, 2013, the Court of Chancery granted the Corporation's motion for summary judgment and denied the Petitioners' motion for judgment on the pleadings.[4]

### D. The Court of Chancery Opinion

During the Court of Chancery proceedings, the Insurers represented to the court that the Corporation would continue to litigate and defend against all third party claims filed *less* than ten years after its dissolution.[5] For that reason (the Corporation argued), it was unnecessary to appoint a receiver to facilitate the litigation of those claims. As for claims filed *more* than ten years after the Corporation dissolved—claims that the Corporation had moved in various courts to dismiss—the Corporation argued that it held no assets ("property") that would justify the appointment of a receiver.[6] Accepting the Insurers' argued-for distinction between those two sets of claims, the Court of Chancery held that claims filed more than ten years after the date of dissolution were time-barred and should be dismissed,[7] and that claims filed less than ten years after the

1. *In re Krafft–Murphy Co., Inc.*, 62 A.3d 94, 96–97 (Del.Ch.2013).

2. *Id.* at 97.

3. *Id.*

4. *Id.* at 96.

5. *Id.* at 104 n. 56.

6. *Id.* at 98.

7. *In re Krafft–Murphy Co., Inc.*, 62 A.3d at 104–05.

date of dissolution could proceed without a court-appointed receiver.[8]

More specifically, the court accepted the Corporation's assurances (made by its Insurers) that it would continue to defend against all claims that were filed within ten years of the date of dissolution. On that basis, the court determined that with respect to those claims, the petition to appoint a receiver "depend[ed] upon . . . a factual scenario that is hypothetical and speculative," and, therefore, was not "justiciable."[9]

Regarding claims filed after the tenth anniversary of the dissolution, the Vice Chancellor noted that under 8 *Del. C.* § 279, a receiver may be appointed at any time if the dissolved corporation has "still existing property interests."[10] The court concluded, however, that the Corporation held no existing property interests, reasoning as follows:[11] The Corporation's liability insurance policies would have value, and constitute "property" under § 279,[12] only if the Corporation could be potentially held liable to third parties, which would trigger coverage under the policies.[13] However, the court determined, Delaware's dissolu-

tion statutes (8 *Del. C.* §§ 278–282) operate to extinguish a dissolved corporation's liability after ten years from the date of dissolution, because those provisions establish a ten year outer limit within which a dissolved corporation can potentially be held liable for third party claims.[14] Therefore, the Corporation could not be "liable for tort suits . . . brought after ten years," and as a consequence, the liability insurance policies "are not as a matter of law undistributed assets in relation to claims commenced more than ten years after dissolution."[15] Lastly, the court concluded, defending against litigation claims for which the corporation cannot be held liable is not part of the Corporation's "unfinished business."[16]

## III. THE PARTIES' CONTENTIONS AND THE STANDARD OF REVIEW

### A. The Contentions on Appeal

Petitioners claim that the Court of Chancery legally erred by not appointing a receiver for the Corporation, for two separate reasons. First, Petitioners claim that

8. *Id.* at 104 n. 56. Petitioners' claims against the Corporation were all filed more than three years after the Corporation's dissolution.

9. *Id.*

10. *Id.* at 101, 102–03 (quoting *In re Citadel Indus., Inc.,* 423 A.2d 500, 506 (Del.Ch. 1980)).

11. *Id.* at 105.

12. Although the 8 *Del. C.* § 279 refers to "property," many Delaware courts, including the Court of Chancery in this proceeding, have used the term "assets" when interpreting § 279. In this Opinion, we use the statutory term "property."

13. *In re Krafft–Murphy Co., Inc.,* 62 A.3d at 103.

14. *Id.* at 104.

15. *Id.* at 104–05. The court distinguished this case from *In re Texas Eastern Overseas, Inc.,* 2009 WL 4270799 (Del.Ch. Nov. 30, 2009) *aff'd,* 998 A.2d 852 (Del.2010) (*TEO* ), where the Court of Chancery found that liability insurance policies constituted "property" for the purposes of 8 *Del. C.* § 279. The Vice Chancellor explained that because the lawsuits at issue in *TEO* were filed seven years after dissolution, the policies still had potential value. *Id.* at 106. Moreover, he reasoned, the parties in *TEO* did not directly address whether insurance policies constituted "property" under § 279. *Id.* at 105.

16. *Id.* at 105.

the Court of Chancery erroneously concluded that, with respect to claims filed more than ten years after the Corporation's dissolution, the unexhausted liability insurance policies do not constitute "property" that would justify appointing a receiver under 8 *Del. C.* § 279. Second, Petitioners claim that the court erroneously concluded that, because the Insurers had undertaken to continue defending those claims on the Corporation's behalf, the Petition was not "justiciable" with respect to claims filed less than ten years after dissolution.

To support their first claim, Petitioners argue as follows: Delaware courts have consistently held that contingent rights constitute "property" for purposes of 8 *Del. C.* § 279. Moreover, the applicable Delaware corporate dissolution statutes (8 *Del. C.* §§ 280–282) do not operate to extinguish a dissolved corporation's liability to third parties. All that those statutes do is specify how directors of a dissolving corporation must provide for the post-dissolution distribution of assets, to enable the corporation's shareholders and directors to avail themselves of a "safe harbor" from post-dissolution liability. Those provisions do not constitute, nor do they operate as, a statute of limitations that would time-bar third party claims against a dissolved corporation. Finally, and in any event (the Petitioners urge), §§ 280–282 are inapplicable because the Corporation never complied with either provision, and because no third party claimant is seeking redress against the Corporation's directors or shareholders.

In support of their second claim of error, Petitioners argue that by declining to appoint a receiver to defend against claims filed less than ten years after dissolution, the Court of Chancery contravened 8 *Del. C.* § 278, under which a dissolved corporation loses all power to act after the statutory three year winding–up period expires. Because any continued activity by a dissolved corporation (as a "body corporate")—including participating in litigation—after § 278's three year period expires is statutorily *ultra vires,* a receiver or trustee must be appointed to lawfully wind up the corporation's affairs.

The Corporation vigorously contests these claims.

### B. The Issues

The parties' contentions raise several issues. The first is whether a receiver [17] may be appointed for a corporation that has been dissolved for more than ten years and whose assets consist solely of unexhausted liability insurance policies. That issue raises two subsidiary questions: (i) whether contingent contractual rights—here, unexhausted liability insurance policies—constitute "property" that would justify the appointment of a receiver under 8 *Del. C.* § 279; and (ii) if so, whether those contingent rights in this case can ever vest. We conclude that contingent contractual rights constitute "property" within the purview of § 279 if they possibly could vest at a future time. Here, the Corporation's right to recover under the liability insurance policies will vest only if the dissolved corporation could be held liable to third parties. That potential liability issue requires us to address whether (as the Corporation argues) the statutory provisions governing dissolution (*i.e.,* §§ 278–282) operate as a general statute of limitations that time-bars all third party claims

---

**17.** 8 *Del. C.* § 279 authorizes the Court of Chancery to appoint a receiver or a trustee. Because the Petitioners seek the appointment of a receiver—and for brevity's sake—we refer primarily to a "receiver" in this Opinion. Our analysis, however, is equally applicable to the appointment of a trustee.

against a dissolved corporation after the limitations period expires. If they do, then the Corporation could not be liable for those claims, and the Corporation's right to recover under the policies on those claims would never vest.

The final question is whether, after the expiration of the three year period described in 8 *Del. C.* § 278, a receiver must be appointed to enable a dissolved corporation lawfully to defend against litigation commenced after the expiration of the three year statutory period.

### C. The Standard of Review

■■■ This Court reviews a trial court's decision to grant summary judgment *de novo*.[18] Summary judgment may be granted only if, based on the undisputed material facts, the moving party is entitled to judgment as a matter of law.[19] Here, because there are no material facts in dispute, the only issues presented are questions of law that involve the proper interpretation of the statutes governing the dissolution and winding-up of a Delaware corporation.

■■■ We also review *de novo* a trial court's interpretation of statutory provisions.[20] As the Court of Chancery correctly observed:

> In interpreting a statute, Delaware courts must ascertain and give effect to the intent of the legislature. If the stat-

ute is found to be clear and unambiguous, then the plain meaning of the statutory language controls. The fact that the parties disagree about the meaning of the statute does not create ambiguity. Rather, a statute is ambiguous only if it is reasonably susceptible of different interpretations, or if a literal reading of the statute would lead to an unreasonable or absurd result not contemplated by the legislature. If a statute is ambiguous, however, courts should consider the statute as a whole, rather than in parts, and read each section in light of all others to produce a harmonious whole. Courts also should ascribe a purpose to the General Assembly's use of statutory language, and avoid construing it as surplusage, if reasonably possible.[21]

### IV. ANALYSIS

### A. Dissolution under the Delaware General Corporation Law

At common law, dissolution marked a corporation's "civil death," and all actions against the corporation abated.[22] The statutory provisions found in 8 *Del. C.* §§ 278–282 supplant and supersede the common law, by prolonging a corporation's existence and its exposure to liability.[23] Those same provisions also shield a dissolved corporation's directors and shareholders from liability in specified circumstances.[24] To facilitate the winding-up of a

18. *Alvarez v. Castellon,* 55 A.3d 352, 354 (Del. 2012) (citing *LaPoint v. AmerisourceBergen Corp.,* 970 A.2d 185, 191 (Del.2009)).

19. *Motorola, Inc. v. Amkor Tech., Inc.,* 849 A.2d 931, 935 (Del.2004) (citing *Rhudy v. Bottlecaps, Inc.,* 830 A.2d 402, 405 (Del. 2003)).

20. *Bay City, Inc. v. Williams,* 2 A.3d 1060, 1061 (Del.2010) (citing *Del. Bay Surgical Servs. v. Swier,* 900 A.2d 646, 652 (Del.2006)).

21. *In re Krafft–Murphy Co., Inc.,* 62 A.3d at 100 (footnotes and quotations omitted).

22. *In re RegO Co.,* 623 A.2d 92, 95 (Del.Ch. 1992).

23. *See In re Citadel Indus., Inc.,* 423 A.2d 500, 503 (Del.Ch.1980) ("[S]tatutory authority is necessary to prolong the life of a corporation past its date of dissolution.").

24. *See In re RegO Co.,* 623 A.2d at 96–97 (explaining that §§ 280–282 "recognize[ ]

dissolved corporation's affairs, § 278 extends the (post-dissolution) corporate existence for three years.[25] Section 279 independently authorizes the appointment of a receiver "at any time" for specified purposes.[26] Sections 280–281(b) outline planning procedures whereby a corporation must provide for future post-dissolution claims, pay existing claims, and distribute any remaining assets to shareholders.[27] Finally, §§ 281(c) and 282 provide a "safe harbor" from liability to directors and shareholders of corporations that have complied with § 281(a) or (b).[28]

### B. A Receiver May Be Appointed to Defend Against Claims Filed More Than Ten Years After Dissolution

Petitioners claim that the Court of Chancery erred by concluding that the Corporation did not hold any "property" that would justify the appointment of a receiver. We agree, for the following reasons: 8 *Del. C.* § 279 authorizes the appointment of a receiver to continue a dissolved corporation's winding-up process—which may involve participating in litiga-

tion—in cases where the corporation has undistributed "property." [29] Under Delaware law, contingent contractual rights, such as unexhausted liability insurance policies, are "property" within the meaning of 8 *Del. C.* § 279 if and to the extent that they are capable of vesting.[30] Here, the Corporation's liability insurance policies are capable of vesting, because no statutory provision governing corporate dissolution operates to time-bar claims made by— and thereby terminate or extinguish a dissolved corporation's potential liability to— third parties.

### 1. A Receivership Appointment Under Section 279

Sections 278 and 279 of the Delaware General Corporation Law ("DGCL") both operate to enable a dissolved corporation to wind up its affairs. Section 278 prolongs the existence of the "body corporate" for three years after dissolution to enable the dissolved corporation to wind up its business, which includes participating in litigation.[31]

---

rights in unknown future corporate claimants" and provide a safe harbor for directors and shareholders of dissolved corporations).

25. *8 Del. C.* § 278 (2011).

26. *Id.* § 279.

27. *Id.* §§ 280–281(b).

28. *id.* §§ 281(c), 282.

29. *In re Citadel Indus., Inc.*, 423 A.2d at 506; *See also In re Texas E. Overseas, Inc.*, 2009 WL 4270799, at *3–4 (Del.Ch. Nov. 30, 2009) *aff'd*, 998 A.2d 852 (Del.2010); *In re Dow Chem. Int'l Inc.*, 2008 WL 4603580, at *1–2 (Del.Ch. Oct. 14, 2008).

30. The Court of Chancery did implicitly acknowledge that an insurance policy could constitute "property" if the insured could be held liable to third parties on covered claims. *In re Krafft–Murphy Co., Inc.*, 62 A.3d at 103, 105.

31. *8 Del. C.* § 278 relevantly provides that "[a]ll corporations ... shall ... be continued, for the term of 3 years from such expiration or dissolution or for such longer period as the Court of Chancery shall in its discretion direct, bodies corporate for the purpose of prosecuting and defending suits, whether civil, criminal or administrative, by or against them, and of enabling them gradually to settle and close their business, to dispose of and convey their property, to discharge their liabilities and to distribute to their stockholders any remaining assets, but not for the purpose of continuing the business for which the corporation was organized. With respect to any action, suit or proceeding begun by or against the corporation either prior to or within 3 years after the date of its expiration or dissolution, the action shall not abate by reason of the dissolution of the corporation; the corporation shall, solely for the purpose of such action, suit or proceeding, be continued as a body corporate beyond the 3–year period and until any judgments, orders or decrees therein

After § 278's three year period expires, § 279 empowers the Court of Chancery to oversee and facilitate (by appointing a trustee or receiver) the completion of the dissolved corporation's unfinished business.[32] Under § 279, the Court of Chancery may appoint a receiver, at any time, to: (i) "take charge of the corporation's property," (ii) "collect the debts and property due and belonging to the corporation," (iii) "appoint an agent or agents," and (iv) "do all other acts ... necessary for the final settlement of the unfinished business of the corporation."[33] Thus, § 279 enumerates the purposes for which a receiver may be appointed, which include administering the "still existing property interests of a dissolved corporation."[34]

### 2. Contingent Property Rights Constitute "Property" Under Section 279

██ Having held that a receiver may be appointed in cases where a dissolved corporation holds undistributed property, we turn to the next question: do unexhausted liability insurance policies held by a dissolved corporation constitute "property" within the meaning of § 279? In *Addy v. Short*, this Court held that assets—*i.e.*,

"property"—of a dissolved corporation include both vested and contingent rights.[35] Therefore, a receiver can be appointed for a dissolved corporation that holds only contingent rights.[36] Although *Addy* dealt with contingent rights in land, its reasoning is equally applicable to contingent rights in personalty. Both kinds of contingent rights have potential value to their holders.

Here, the insurance policies obligate the Insurers to pay "all sums which the insured shall become legally obligated to pay as damages" covered by the policies.[37] Because the Corporation is exposed to asbestos-related liabilities, those policies represent significant potential indemnification value to the Corporation.[38] And, because the Corporation held those policies before it dissolved, they constitute "property" of the Corporation within the purview of § 279.[39] In *In re Texas Eastern Overseas, Inc.* (which this Court affirmed), the Court of Chancery recently so concluded.[40] There, that court held that unexhausted insurance policies constituted "property" that permitted the court to appoint a receiver for a dissolved corporation under § 279. That holding correctly states Delaware law, and we reaffirm it.

---

shall be fully executed, without the necessity for any special direction to that effect by the Court of Chancery."

**32.** *In re Citadel Indus., Inc.*, 423 A.2d at 504–05.

**33.** 8 *Del. C.* § 279.

**34.** *In re Citadel Indus., Inc.*, 423 A.2d at 506 ("Where there are no undistributed assets against which to effect a recovery, § 279 provides little solace to one possessing an after-discovered claim against a dissolved corporation."); *See also Addy v. Short*, 89 A.2d 136, 140 (Del.1952) (interpreting a predecessor statute); *In re Texas E. Overseas, Inc.*, 2009 WL 4270799, at *3–4; *In re Dow Chem. Int'l Inc.*, 2008 WL 4603580, at *1.

**35.** *Addy*, 89 A.2d at 140.

**36.** *Id.*

**37.** *In re Krafft–Murphy Co., Inc.*, 62 A.3d at 103 (quoting language from Krafft–Murphy's insurance contracts).

**38.** *See Addy*, 89 A.2d at 140 (explaining that a property interest is "none the worse" for being "wholly contingent").

**39.** *Addy*, 89 A.2d at 141 (distinguishing *McBride v. Murphy*, 124 A. 798 (Del.Ch.1924) because *McBride* involved a post-dissolution acquisition of rights).

**40.** *In re Texas E. Overseas, Inc.*, 2009 WL 4270799, at *6.

### 3. The Dissolution Statutes Do Not Extinguish The Corporation's Liability To Third Parties

■ The second issue is whether the Corporation's contingent rights under the insurance policies are capable of vesting? We conclude that they are, because no statutory provision governing corporate dissolution operates to extinguish the Corporation's potential liability to third parties by time-barring those parties' claims.[41]

Nothing in § 278 operates as a statute of limitations that would bar claims or extinguish a dissolved corporation's liability to third parties. It is the case—and our courts have frequently held—that as a *body corporate* a dissolved corporation ceases to exist and is not amenable to suit after the expiration of § 278's three year period.[42] From that it does not follow, however, that § 278 extinguishes the corporation's underlying liability to third parties. To the contrary, § 279 enables a dissolved corporation to (through a receiver) "sue and *be sued*" after the expiration of the § 278 three year period.[43] That is, § 279 establishes that the expiration of § 278's three year period does not extinguish the dissolved corporation's underlying liability.

Sections 280(c) and 281(b) also undermine any argument that § 278 operates as a general statute of limitations. Those provisions require a dissolved corporation to set aside assets for the payment of claims against the corporation that may arise or become known five to ten years after dissolution.[44] Those requirements demonstrate that the "legislature intended to recognize the potential for corporate liability based on claims asserted . . . five to ten years after dissolution."[45]

Nor do §§ 280–282 operate to cut off a dissolved corporation's liability. Those statutory provisions offer directors of dissolved corporations two alternate pathways to discharge their fiduciary duties to existing and future claimants, while also enabling the corporation to make distributions during its corporate winding-up activities.[46] Sections 280–281(a) accomplish that by permitting a dissolving corporation to follow a court-supervised process[47] under which the corporation: (i) gives notice to persons with existing, contingent, conditional or unmatured claims;[48] (ii) sets aside "security" both for pending, contingent, conditional or unmatured claims[49] and for claims likely to arise or become known to the corporation within five years after the date of dissolution or such longer period of time as the Court of Chancery may determine not to exceed 10 years after the date of dissolution;[50] and (iii)

---

41. We note that the Court of Chancery Opinion acknowledged that § 278 probably does not cut off corporate liability after three years. *In re Krafft–Murphy*, 62 A.3d at 104.

42. *In re Citadel Indus., Inc.*, 423 A.2d at 504, 507; *see In re RegO Co.*, 623 A.2d at 96.

43. *City Investing Co. Liquidating Trust v. Continental Cas. Co.*, 624 A.2d 1191, 1195 (Del. 1993) (citing *Addy*, 89 A.2d at 140).

44. 8 *Del. C.* §§ 280(c)(3), 281(b).

45. *In re Krafft–Murphy Co., Inc.*, 62 A.3d at 104.

46. *In re Transamerica Airlines, Inc.*, 2006 WL 587846, at *7 (Del.Ch. Feb. 28, 2006). Upon dissolution, directors of a corporation owe fiduciary duties to creditors as well as shareholders. *Gans v. MDR Liquidating Corp.*, 1990 WL 2851, at *9 (Del.Ch. Jan. 10, 1990).

47. 8 *Del. C.* § 280.

48. *Id.* § 280(a)-(b).

49. *Id.* § 280(b)(2) and (c)(1)-(2).

50. *Id.* § 280(c)(3).

distributes to shareholders any assets that remain after claims have been paid or provided for as set forth in § 281(a).[51]

Alternatively, § 281(b) offers a dissolving corporation an unsupervised, "default"[52] procedure under which the corporation must, within three years of dissolution, "adopt a plan of distribution" that reasonably provides for: (i) all claims known to the corporation, (ii) any suits pending against the corporation, and (iii) claims that "are likely to arise or to become known to the corporation or successor entity within 10 years after the date of dissolution."[53] Section 281(b) provides that any assets that remain after the dissolved corporation has paid existing claims and provided for pending and future claims "shall be distributed to the stockholders of the dissolved corporation."[54] Compliance with either §§ 280–281(a) or § 281(b) shields directors and shareholders of the dissolved corporation from post-dissolution liability to third party claimants.[55]

To be precise, those provisions do time-bar certain claims against a dissolved corporation—but only in specified, narrow circumstances. Section 280(a)(2) bars any claim in cases where a known, existing claimant, who was given actual notice by the dissolving corporation as prescribed in § 280(a)(1), fails to present the claim to the corporation "by the date referred to in paragraph (a)(1)c . . . ."[56] Subparagraph 4 similarly bars claims against a dissolved corporation brought by a claimant whose presented claim was rejected by the corporation and who "does not commence an action, suit or proceeding with respect to the claim no later than 120 days after the mailing of the rejection notice."[57] On the face of these statutes, only the above-described two categories of claims—but no others—are time-barred.

Nor do the five and ten year claims planning periods outlined in §§ 280(c)(3) and 281(b) operate more broadly to extinguish a dissolved corporation's liability. By concluding otherwise, the Court of Chancery misread those statutes. The only statutes that address liability in relation to those five and ten year periods are §§ 281(c) and 282. Section 281(c) provides that "*[d]irectors* of a dissolved corporation . . . which has complied with [the court-supervised or default distribution procedures] shall not be personally liable to the claimants of the dissolved corporation."[58] Section 282 limits the liability of the *shareholders* of a dissolved corporation that has

51. *Id.* § 281(a).

52. We refer to § 281(b) as a default procedure, because a dissolving corporation that does not follow §§ 280–281(a) is statutorily required to follow the procedure prescribed by § 281(b).

53. 8 *Del. C.* § 281(b).

54. *Id.*

55. *Id.* §§ 281(c), 282; *In re RegO Co.*, 623 A.2d at 97 (noting that following the court-supervised procedure affords directors of a dissolving corporation greater protection because "compliance with [§ 281(b)]'s standard, "reasonably likely to be sufficient" will,

in principle at least, always be litigable"). Section 281(b) imposes on dissolving corporations a stand-alone obligation to adopt a plan of dissolution before the expiration of § 278's three year period. But, the only consequence of non-compliance with that provision is that the directors and shareholders of the dissolved corporation will be denied the benefit of the safe harbors afforded by §§ 281(c) and 282. Thus, a primary benefit that flows from compliance with § 281(b) would appear to be the availability of those safe harbors.

56. 8 *Del. C.* § 280(a)(2).

57. *Id.* § 280(a)(4).

58. *Id.* § 281(c) (emphasis added).

complied with either the court-supervised or the default claims planning procedures. These provisions concern only the liability of directors and shareholders—not the liability of the dissolved corporation.

Moreover, the legislative history of §§ 280–281 establishes that the five and ten year claims planning periods were not intended to operate as general statutes of limitation. The primary benefit of, and incentive for, complying with either the court-supervised (§§ 280–281(a)) or the "default" (§ 281(b)) claims planning procedures is the "safe harbor" protection available to the directors and shareholders of the dissolved corporation.[59] The 1990 amendments to §§ 280(c) and 281(b) required a dissolving corporation to provide for claims "likely to arise or to become known to the corporation ... prior to the expiration of applicable statutes of limitation."[60] The General Assembly clearly contemplated that a dissolved Delaware corporation could continue to be liable to third parties long after its formal dissolution. Nonetheless, the imprecision of the planning period language in the 1990 versions of §§ 280(c) and 281(b) ("prior to the expiration of applicable statutes of limitation") made it difficult for directors to take advantage of that protection in the case of "long-tail" tort claims, because those statutory provisions "in effect, provide[d] no limitation for planning ... purposes."[61] To provide the needed precision, the Delaware General Assembly amended §§ 280(c) and 281(b) in 1994 to require that a dissolving corporation provide for

claims likely to arise "within 5 years" (§ 280(c)) or "within 10 years" (§ 281(b)) from the date of dissolution.[62] The synopsis of the amendments to §§ 280 and 281 explained that those changes "provide[d] a temporal limitation on the claims for which a dissolved corporation ... must make provision...." That same synopsis explained that other amended provisions of § 280 (i.e., § 280(a)(2) and (4)) "barred" certain claims. Had the General Assembly intended the ten year period to operate as a limitations time bar, that body would have clearly expressed that intent in either the synopsis or in the statutory language.

The Court of Chancery's conclusion that §§ 280–282 shield the dissolved corporation from liability finds no support in those statutes' plain language or legislative history.[63]

### 4. The Corporation's Contrary Arguments

The Corporation advances four arguments as support for the Court of Chancery's determination that the liability insurance policies do not constitute "property" of the Corporation. First, the Corporation argues that, because §§ 280 and 281 do not require a dissolving corporation to set aside assets for claims that may arise after ten years from the date of dissolution, those provisions necessarily extinguish a dissolved corporation's post-dissolution liability to third parties after the ten year period

---

59. *See Gans,* 1990 WL 2851, at *8.

60. 67 Del. Laws, c. 376, §§ 24, 27 (1990).

61. *In re RegO Co.,* 623 A.2d at 102 n. 27; *see also* 2 DAVID A. DREXLER ET AL., DELAWARE CORPORATION LAW AND PRACTICE § 38.05[5] (2012).

62. 69 Del. Laws, c. 266, §§ 15, 20 (1994).

63. *See* 1 R. FRANKLIN BALOTTI & JESSE A. FINKELSTEIN, THE DELAWARE LAW OF CORPORATIONS & BUSINESS ORGANIZATIONS § 10.18 (3d ed.2011) (explaining that the court-supervised procedure under §§ 280–281(a) "does not operate as a statute of limitations and does not extinguish any claims ... against the dissolved corporation").

expires.[64]   That argument lacks merit.

The apparent premise of the Corporation's argument is that, because §§ 281(a) and (b) require a dissolved corporation to distribute to its shareholders any "remaining assets" not set aside for or paid to claimants, the dissolved corporation will have no assets after ten years from the date of dissolution from which late-arriving claimants could recover.  That premise is misconceived.  A determination of the "remaining assets" that can be distributed to shareholders must be based on the distributable assets that exist, and on the dissolving corporation's estimates of the value of pending and future claims, at the time the plan of distribution is adopted.  If the assets set aside to provide for pending claims and for claims likely to arise within ten years after dissolution exceed the value of the claims actually brought within that period, the dissolved corporation will continue to have net assets on the tenth anniversary of its dissolution.  Moreover, even after any initial distribution to shareholders, the dissolved corporation could continue to hold any contingent assets that would vest thereafter to satisfy creditor claims.  There is no statutory requirement that the dissolved corporation *must* distribute to shareholders all assets that remain after any initial asset distribution to creditors or shareholders.[65]

The Corporation's argument would also lead to results that are inconsistent with a ten year time bar.  Because (in the Corporation's view) the planning procedure under § 281(b) leaves no assets available for claims brought after ten years from the date of dissolution, § 281(b) must (the Corporation contends) operate as a general ten year statute of limitations.  But, § 281(b) requires only that a dissolving corporation provide for claims that are "*likely* to arise ... within 10 years after the date of dissolution"—not *all* claims that *will* arise.[66]   The Corporation's interpretation would also bar claims that were unforeseen at the time of dissolution yet were timely because they were brought within ten years after dissolution.

Ultimately, neither the plain language nor the legislative history of §§ 280–282 support the conclusion that those provisions operate as a ten year statute of limitations.

Second, the Corporation argues that § 279 does not subject the Corporation to third party liability, because liability insurance cannot be considered a "property right" in the absence of a final judgment against the insured.[67]   As support, the Corporation cites decisions of courts of other jurisdictions.[68]   But, the cited decisions interpret statutes that are dissimilar

**64.** The Corporation also claimed during oral argument that the liability of a dissolved corporation is extinguished upon the expiration of the three year winding-up period provided for in § 278.

**65.** *See* DREXLER ET AL., *supra* note 61, § 38.05[6].

**66.** 8 *Del. C.* § 281(b) (emphasis added).

**67.** The Corporation also argues that the defense and resolution of newly commenced lawsuits does not constitute "unfinished business" under § 279.  Petitioners do not argue that a receiver should be appointed to settle "unfinished business" independent of the

Corporation's undistributed property.  Thus, we do not address whether the defense of newly filed lawsuits would constitute "unfinished business" under § 279 in the absence of undistributed property.

**68.** The Corporation also points to a passing mention of liability insurance in the dicta of *In re Citadel,* addressing whether a dissolved corporation may be revived under § 278, as evidence that insurance policies are not considered "property" under 8 *Del. C.* § 279.  *In re Citadel Indus., Inc.,* 423 A.2d at 506.  We find this evidence unpersuasive.

to Delaware's. Two of those cases, *Blankenship v. Demmler Mfg. Co.* and *In re All Cases Against Sager Corp.*, turned on the interpretation of the Illinois dissolution statute,[69] which explicitly barred claims against a dissolved corporation filed more than five years after dissolution.[70] The courts in *Sager* and *Blankenship* held that where a dissolved corporation is immune from suit, insurance policies have no value.[71] However, because the Delaware dissolution statutes impose no such time bar, *Blankenship* and *Sager* are inapposite.

Third, the Corporation contends that the recent decision in *In re Texas Eastern Overseas, Inc.* (*TEO*)[72] is distinguishable and does not accurately state Delaware law. The Corporation argues that in *TEO*, the insurance policies had value because the relevant claims were filed less than ten years after dissolution, whereas the claims at issue here were filed more than ten years after dissolution. That is a distinction without a difference. As we have held, the expiration of ten years does not operate to extinguish a dissolved corporation's liability to third parties. The Corporation also points to the Court of Chancery's observation in a footnote that its holding would "avoid a reordering of societal risk allocation from the insurers."[73] That observation (the Corporation argues) evidences a faulty understanding of Delaware public policy. We need not address this argument, because our holding in this case does not rest on policy-based considerations.

The Corporation next argues that allowing the lawsuits to proceed through the office of a court-appointed receiver would violate Delaware's prohibition against direct actions against insurers. This argument fails because the Corporation has not shown how the appointment of a receiver would lead to a direct action against the Insurers. The named defendant in Petitioners' asbestos claims is, and would continue to be, the (insured) Corporation. A receiver would simply participate in the litigation on the dissolved Corporation's behalf.

## C. A Receiver Must be Appointed for the Dissolved Corporation to Participate in Litigation Brought More than Three Years After Dissolution

■ Lastly, we hold that the Court of Chancery erred by accepting the Insurers' representation that the Corporation would continue to litigate those claims filed within ten years of the Corporation's dissolution, and by concluding, based on that representation, that that assurance rendered the Petition "non justiciable." As a pure matter of statutory law, the Corporation presently lacks any authority to continue managing the winding-up of its business, which includes defending lawsuits brought against it. Only if a receiver is

**69.** *In re All Cases Against Sager Corp.*, 132 Ohio St.3d 5, 967 N.E.2d 1203, 1210 (2012); *Blankenship v. Demmler Mfg. Co.*, 89 Ill. App.3d 569, 44 Ill.Dec. 787, 411 N.E.2d 1153, 1156 (1980).

**70.** *In re Sager*, 967 N.E.2d at 1210. At the time *Blankenship* was decided, the relevant statutory period was two years. *Blankenship*, 44 Ill.Dec. 787, 411 N.E.2d at 1156.

**71.** *In re Sager*, 967 N.E.2d at 1210–11; *Blankenship*, 44 Ill.Dec. 787, 411 N.E.2d at 1157.

The case applying Michigan law cited by the Corporation similarly deals with a dissolution statute that explicitly bars claims filed after a certain point. *Gilliam v. Hi–Temp Products Inc.*, 260 Mich.App. 98, 677 N.W.2d 856, 874 (2003).

**72.** *In re Texas E. Overseas, Inc.*, 2009 WL 4270799.

**73.** *Id.* at *5 n. 37.

appointed can the Corporation lawfully obtain that authority.

After the expiration of § 278's three year winding-up period, the dissolved Corporation ceased to exist as a "body corporate," and lost the power to conduct its own affairs.[74] From that point onward, the Corporation continued "solely for the purpose of [any] action, suit or proceeding" commenced before the expiration of the three year period.[75] For all other purposes, including defending lawsuits brought against it after the three year period, the Corporation ceased to exist as a "body corporate," and by statute lost its authority to manage its unfinished business.[76] That the Corporation's Insurers are continuing to defend those lawsuits on the Corporation's behalf cannot re-infuse the Corporation with a legal existence that by statute has terminated. The only means by which the Corporation may become re-empowered to defend its interests in the litigation is through the appointment of a receiver under § 279.[77] Consequently, the Court of Chancery erred by denying relief under § 279 based on the assurances of a non-existent, dissolved corporation's insurers that they would continue to defend against pending litigation. It follows that to hold that those assurances rendered the Petition "non justiciable" was also legal error. The availability—indeed the necessity—of a court-appointed receiver under § 279 made the Petition ripe for judicial determination.

## V. CONCLUSION

For the foregoing reasons, we reverse the grant of summary judgment and remand to the Court of Chancery for further proceedings in accordance with this Opinion. Jurisdiction is not retained.

---

**74.** *In re Citadel Indus., Inc.,* 423 A.2d 500, 504 (Del.Ch.1980) (citing *Harned v. Beacon Hill Real Estate Co.,* 80 A. 805 (Del.Ch.1911) *aff'd sub nom. Harned v. Beacon Hill Real Estate Co.,* 84 A. 229 (Del.1912)).

**75.** 8 *Del. C.* § 278.

**76.** *In re Citadel Indus., Inc.,* 423 A.2d at 503–04, 507.

**77.** *See In re Dow Chem. Int'l Inc.,* 2008 WL 4603580, at *1 ("[O]nce the three-year period has expired and there is no pending litigation or assets to be disposed of, the Court no longer has discretion to 'continue' the corporate existence under § 278."); *In re Citadel Indus., Inc.,* 423 A.2d at 504, 507.