# COURT OF CHANCERY
## OF THE
## STATE OF DELAWARE

BONNIE W. DAVID
MAGISTRATE IN CHANCERY

COURT OF CHANCERY COURTHOUSE
34 THE CIRCLE
GEORGETOWN, DE 19947

Date Submitted: September 26, 2023
Final Report: October 18, 2023

Kevin S. Mann, Esq.
David G. Holmes, Esq.
Cross & Simon, LLC
1105 North Market Street, Suite 901
P.O. Box 1380
Wilmington, Delaware 19899-1380

Kevin R. Shannon, Esq.
Christopher N. Kelly, Esq.
Justin T. Hymes, Esq.
Potter Anderson & Corroon LLP
Hercules Plaza, 6th Floor
1313 North Market Street
Wilmington, Delaware 19801

RE: *In re ADM Trade Resources, Inc.*,
C.A. No. 2023-0392-BWD

Dear Counsel:

This final report resolves a motion to dismiss a petition for the appointment of a receiver for a dissolved corporation under 8 *Del. C.* § 279. The petitioner—a plaintiff in litigation before the Eastern Caribbean Supreme Court in the British Virgin Islands—seeks appointment of a receiver for a dissolved Delaware corporation—a defendant in that litigation—to accept service of process, respond to discovery requests, and marshal assets remaining with the dissolved corporation. As explained below, the petition fails to plead good cause for the appointment of a receiver because it does not allege facts supporting an inference that (1) the dissolved corporation has undistributed property that a receiver could marshal or (2) the

dissolved corporation wrongfully distributed assets at the time of dissolution.  I therefore recommend that the motion to dismiss be granted and the petition be dismissed.

## I.   BACKGROUND

The following facts are drawn from the Verified Petition for the Appointment of a Receiver for ADM Trade Resources, Inc. Pursuant to 8 *Del. C.* § 279 (the "Petition") and the documents it incorporates by reference, including an Amended Statement of Claim filed in the Eastern Caribbean Supreme Court in the High Court of Justice, Virgin Islands, Commercial Division, under the caption *BTA Bank v. Sabyrbaev, et al.*, Claim No. BVI HC (COM)/0171 (BVI ECSC June 7, 2022) (the "BVI Complaint").[1]

---

[1] *See, e.g.*, *Winshall v. Viacom Int'l, Inc.*, 76 A.3d 808, 818 (Del. 2013) ("[A] plaintiff may not reference certain documents outside the complaint and at the same time prevent the court from considering those documents' actual terms." (citation and internal quotation marks omitted)); *Freedman v. Adams*, 2012 WL 1345638, at *5 (Del. Ch. Mar. 30, 2012) ("When a plaintiff expressly refers to and heavily relies upon documents in her complaint, these documents are considered to be incorporated by reference into the complaint[.]" (citation omitted)).

The BVI Complaint is attached to the Petition as Exhibit A [hereinafter, "BVI Compl."].

> **A.     BTA Sues The Company In The British Virgin Islands For Alleged Participation In A Fraudulent Scheme.**

Petitioner BTA Bank ("Petitioner" or "BTA") is a joint stock company formed under the laws of the Republic of Kazakhstan.  Verified Pet. for the Appointment of a Receiver [hereinafter, "Pet."] ¶ 3, Dkt. 1.

Through this action, Petitioner seeks appointment of a receiver for ADM Trade Resources, Inc. (the "Company"), a dissolved Delaware corporation.  Prior to its dissolution on December 27, 2016, the Company was a Delaware corporation headquartered in Illinois.  Pet. ¶¶ 4, 7.  According to the Petition, the Company was formed as a joint venture between Archer-Daniels-Midland Company ("ADM") and ADM Germany GmbH ("ACTI") "to utilize the commodity sales of ADM and ACTI through the use of specialized trade finance structures and techniques in select markets around the world."  Pet. ¶ 4.

Those specialized structures are the subject of pending litigation before the Eastern Caribbean Supreme Court in the High Court of Justice, Virgin Islands, Commercial Division (the "BVI Court").  On July 6, 2022, Petitioner filed the BVI

Complaint, naming 54 individuals and entities, including the Company, as defendants.[2]  *See* Pet., Ex. A.

The BVI Complaint alleges that between 2005 and 2009, BTA fiduciaries, aided and abetted by other defendants (including the Company), participated in a fraudulent scheme involving offshore entities designed to enrich the participants at the expense of BTA.  Pet. ¶ 5.  While admittedly oversimplified, the alleged scheme worked as follows:

- **First Sale**:  A commodities seller (the "Seller") would contract with an offshore special purpose vehicle ("SPV") for the Seller to sell, and the SPV to purchase, commodities.  BVI Compl. ¶¶ 65-71.

- **Sale Back**:  Concomitant with the First Sale, the SPV would sell the commodities back to the Seller or its affiliate.  As a result of the Sale Back, no goods were exchanged.  *Id.*

- **Letters of Credit**:  To facilitate the transactions, BTA would issue a letter of credit to the SPV, ostensibly to fund the purchase of the commodities.  Each letter of credit issued by BTA was "discounted" by

---

[2] The BVI Complaint names "ADM-ACTI Trade Resources, Inc.," the name under which the Company was incorporated in 2002.  In 2015, the Company amended its certificate of incorporation to change its name to ADM Trade Resources, Inc.  Pet. ¶ 7.

a third-party bank in order to generate the funds needed in the transaction. In exchange, BTA agreed to repay the bank with interest or a fixed fee. *Id.*

According to the BVI Complaint, these transactions generated a sizeable, risk-free commission for the Sellers (including the Company). *Id.* ¶¶ 65.9-65.11. But for BTA, the risk substantially outweighed the benefits. Although the SPVs agreed to repay the funds borrowed under the letters of credit, the only collateral pledged as security were the commodities purchased through the First Sale—commodities that never actually changed hands. So, although BTA earned a commission on the value of the letter of credit, it also assumed significant risk that the SPVs would not satisfy their unsecured repayment obligations and BTA would have to repay the third-party banks in full. *Id.* ¶ 65.10.

BTA claims it incurred a loss of more than $231 million as a result of the transactions described above, and seeks to hold the defendants named in the BVI Complaint jointly and severally liable for that harm. Pet. ¶ 12. The BVI Complaint challenges transactions that occurred from 2005 to 2009, and by the time the litigation was filed in 2021, several entities that allegedly participated in the fraudulent transactions had "dissolved or ceased to exist." Pet. ¶ 11. On September

21, 2021, the BVI Court issued an order restoring certain entities formed under BVI law so that those entities could be served with the BVI Complaint. *See* Pet., Ex. B.

### B.    BTA Seeks The Appointment Of A Receiver For The Company.

On April 3, 2023, BTA filed its Petition in this Court, seeking appointment of a receiver for the Company under 8 *Del. C.* § 279. As reflected in the Petition, BTA seeks appointment of a receiver to:

> (1) accept service of process as a defendant in a case currently pending in the British Virgin Islands entitled *Joint Stock Company "BTA Bank" v. Sabyrbaev, et al.*: Claim No. BVI HC (COM)2021/0171 (the "Litigation");
>
> (2) provide an accounting of profits the Company made via a fraudulent scheme and/or by dishonestly assisting with that scheme, which fraudulent scheme is the basis for the Litigation;
>
> (3) examine the dissolution and distribution of assets of the Company for purposes of assessing the payment of damages or other relief in the Litigation;
>
> (4) provide information dealings with Petitioner and its employees and/or officers in connection with the fraudulent scheme;
>
> (5) nullify the cancellation of the Company and restore its status as a Delaware corporation; and
>
> (6) marshal assets remaining with the Company, including potentially available insurance policies, and provide representation for the Company in the Litigation.

Pet. ¶ 1.

On May 2, 2023, the Company moved to dismiss the Petition pursuant to Court of Chancery Rules 12(b)(5) and 12(b)(6) (the "Motion to Dismiss"). Dkt. 4.

On June 16, 2023, the Company filed its Opening Brief in Support of its Motion to Dismiss. Resp't's Op. Br. in Supp. of its Mot. to Dismiss [hereinafter, "OB"], Dkt. 7. The same day, ADM, the 100% stockholder of the Company at the time of its dissolution, moved to intervene.[3] Dkt. 9. Vice Chancellor Glasscock granted ADM's motion to intervene on July 13, 2023. Dkt. 11. On July 19, 2023, ADM filed a Verified Complaint in Intervention and a joinder to the Motion to Dismiss. Dkts. 12-13.

On August 1, 2023, BTA filed its Answering Brief in Opposition to Respondent ADM Trade Resources, Inc.'s Motion to Dismiss. Pet.'s Ans. Br. in Opp'n to ADM Trade Resources, Inc.'s Mot. to Dismiss [hereinafter, "AB"], Dkt. 15. On August 21, 2023, the Company filed its Reply Brief in Further Support of its Motion to Dismiss. Resp't's Reply in Further Supp. of its Mot. to Dismiss [hereinafter, "RB"], Dkt. 18.

---

[3] In its motion to intervene, ADM explained that, in light of this Court's decision in *In re Reinz Wisconsin Gasket, LLC*, 2023 WL 3300042 (Del. Ch. May 8, 2023), *cert. denied*, 2023 WL 4440289 (Del. July 10, 2023) (TABLE), "there may be a potential question as to whether [the Company] can retain counsel and defend against BTA's Petition in this Action." Dkt. 9 ¶ 8. Counsel, therefore, has appeared on behalf of ADM to advance the arguments raised in the Motion to Dismiss.

This action was reassigned to me on August 8, 2023. Dkt. 17. I heard oral argument on the Motion to Dismiss on September 26, 2023. Dkt. 25.

## II. ANALYSIS

The Company has moved to dismiss the Petition under Court of Chancery Rule 12(b)(6) for failure to state a claim upon which relief may be granted. When reviewing a motion to dismiss under Rule 12(b)(6), Delaware courts "(1) accept all well pleaded factual allegations as true, (2) accept even vague allegations as 'well pleaded' if they give the opposing party notice of the claim, [and] (3) draw all reasonable inferences in favor of the non-moving party." *Cent. Mortg. Co. v. Morgan Stanley Mortg. Cap. Hldgs. LLC*, 27 A.3d 531, 535 (Del. 2011). "[T]he governing pleading standard in Delaware to survive a motion to dismiss is reasonable 'conceivability.'" *Id*. at 537.

Through the Petition, BTA seeks appointment of a receiver for the Company pursuant to Section 279 of the Delaware General Corporation Law, which states:

> When any corporation organized under this chapter shall be dissolved in any manner whatever, the Court of Chancery, on application of any creditor, stockholder or director of the corporation, or any other person *who shows good cause therefor*, at any time, may either appoint 1 or more of the directors of the corporation to be trustees, or appoint 1 or more persons to be receivers, of and for the corporation, to take charge of the corporation's property, and to collect the debts and property due and belonging to the corporation, with power to prosecute and defend, in the name of the corporation, or otherwise, all such suits as may be

> necessary or proper for the purposes aforesaid, and to appoint an agent
> or agents under them, and to do all other acts which might be done by
> the corporation, if in being, that may be necessary for the final
> settlement of the unfinished business of the corporation.

8 *Del. C.* § 279 (emphasis added). BTA bears the burden of demonstrating good

cause for the appointment of a receiver. *LeCrenier v. Cent. Oil Asphalt Corp.*, 2010

WL 5449838, at *4 (Del. Ch. Dec. 22, 2010).

Section 279 does not define "good cause." To establish good cause, a

petitioner must do more than speculate that some purpose for the receiver exists. *In

re Dow Chem. Int'l Inc. of Delaware*, 2008 WL 4989069, at *2 (Del. Ch. Nov. 18,

2008) [hereinafter, "*Dow II*"]. The petitioner must demonstrate a "reasonable

likelihood" that a "positive outcome would result" from appointing the receiver. *In

re Texas E. Overseas, Inc.*, 2009 WL 4270799, at *5 n.39 (Del. Ch. Nov. 30, 2009),

*aff'd*, 998 A.2d 852 (Del. 2010). "Ultimately, good cause depends upon the

perception that appointment of a receiver is likely to be—in a broader sense—worth

the effort." *Id.*

Here, the Petition fails to plead good cause for the appointment of a receiver

because it does not allege facts supporting an inference that (1) the dissolved

corporation has undistributed property that a receiver could marshal or (2) the

dissolved corporation had assets at the time of dissolution that were wrongfully distributed.

> **A.** **The Petition Does Not Allege Facts Supporting An Inference That The Company Is Reasonably Likely To Have Undistributed Property That A Receiver Could Marshal.**

The Petition fails to plead good cause for the appointment of a receiver under Section 279 because it does not allege non-conclusory facts supporting an inference that the Company holds undistributed property that a receiver could marshal.

As the Delaware Supreme Court has explained, the purpose of Section 279 is to "empower[] the Court of Chancery to oversee and facilitate (by appointing a trustee or receiver) the completion of the dissolved corporation's unfinished business," including by "administering the 'still existing property interests of a dissolved corporation.'" *In re Krafft-Murphy Co., Inc.*, 82 A.3d 696, 704 (Del. 2013) (citations omitted).[4] "If there are no undistributed assets and no other need is

---

[4] *See also id.* at 703 ("[Section] 279 authorizes the appointment of a receiver to continue a dissolved corporation's winding-up process . . . in cases where the corporation has undistributed 'property.'" (citations omitted)); *In re Dow Chem. Int'l Inc.*, 2008 WL 4603580, at *1 (Del. Ch. Oct. 14, 2008) ("The purpose of § 279 is to benefit shareholders and creditors where there are undisposed of assets remaining after dissolution by allowing appointment of a receiver 'to safeguard the collection and administration of still existing property interests of a dissolved corporation.'" (citation omitted)); *In re Citadel Indus., Inc.*, 423 A.2d 500, 506 (Del. Ch. 1980) ("The language of 8 *Del. C.* s. 279 implies that its primary purpose is to safeguard the collection and administration of still existing property interests of a dissolved corporation. It functions primarily for the benefit of shareholders and creditors where assets remain undisposed of after dissolution."); *Jones v. Maxwell*

identified for a receiver to do what may be necessary for the final settlement of the

unfinished business of the corporation, there is no basis to appoint a receiver." 3

Robert S. Saunders, et al., *Folk on the Delaware Corporation Law* § 279.02[c] (7th

ed. 2021).

Because a proceeding under Section 279 "is not an efficient venue for

resolving whether a receiver has any definitive claim to [an] asset," a petitioner is

not required to prove by a preponderance of the evidence that the dissolved entity

actually possesses undistributed property. *In re Texas E. Overseas, Inc.*, 2009 WL

4270799, at *5 n.39. Instead, "good cause depends upon a reasonable likelihood

that there would be an asset available to the receiver that would benefit a creditor-

claimant . . . ." *Id.* The good cause standard "requires something more than

speculation"—"a petitioner has not shown good cause under § 279 if it does no more

than speculate that the dissolved corporation may still have undistributed assets."

*Id*. at *4.[5] Through the lens of a motion to dismiss, the petition must plead facts that,

---

*Motor Co.*, 115 A. 312, 315 (Del. Ch. 1921) ("When a corporation has no assets, no useful purpose can be subserved by naming a receiver—an officer of the court whose function under the statute is to take, hold, manage and administer assets; and in such case, the receiver ought not to be appointed . . . .").

[5] *See also In re Reinz Wisconsin Gasket, LLC*, 2023 WL 2568326, at *5 (Del. Ch. Mar. 20, 2023) (rejecting the argument that a petitioner "need only show a 'specter' of assets" to demonstrate good cause for the appointment of a receiver); *Dow II*, 2008 WL 4989069, at *2 (denying motion for reargument where a Section 279 petition was denied because "[t]he

if true, make it reasonably conceivable that the dissolved corporation is reasonably likely to have undistributed property.

Here, BTA alleges that the Company may have three kinds of property: (1) past profits; (2) insurance policies; and (3) "information." These arguments do not support a reasonable inference that the Company likely has property that a receiver could marshal.

First, BTA alleges that from 2005 to 2009, the Company earned $12.8 million in commissions from its fraudulent scheme with BTA, which "either remain with the Company or were wrongfully distributed to individuals who took part in or had knowledge of the fraudulent scheme." Pet. ¶¶ 6, 9. This bare allegation, made on "information and belief" and in the alternative, is "merely conclusory and need not be accepted as true." *Griffin Corp. Servs., LLC v. Jacobs*, 2005 WL 2000775, at *6 (Del. Ch. Aug. 11, 2005) (citing *Haber v. Bell*, 465 A.2d 353, 357 (Del. Ch. 1983)).[6] The Petition alleges no factual basis to infer that profits made more than fourteen years ago are reasonably likely to remain in the dissolved entity today. *See Dow II*,

only justification petitioner provide[d] [wa]s speculation that respondent *may* hold some assets" (emphasis in original)).

[6] *See also O'Gara v. Coleman*, 2020 WL 752070, at *6 (Del. Ch. Feb. 14, 2020) (explaining that allegations made on "information and belief" were not "supported by or inferred from well-pleaded facts in the Amended Complaint, and the Court thus need not accept them as true").

2008 WL 4989069, at *1 ("[P]etitioner's allegation that [the dissolved company] held assets in 1985 does not show that the company held assets after it was dissolved in 1988."). Speculation that property *may* still exist does not plead good cause to appoint a receiver.[7]

Next, BTA alleges that "[i]f a receiver is not appointed, the Company's remaining assets, including rights under any applicable insurance policies, will not be able to be utilized in any pending and future claims against the Company . . . ." Pet. ¶ 14. While vested and contingent rights under insurance policies can constitute property under Section 279,[8] this allegation is wholly conclusory. BTA also failed to brief it, so it is waived. *See Emerald P'rs v. Berlin*, 726 A.2d 1215, 1224 (Del. 1999) ("Issues not briefed are deemed waived.").

---

[7] *See Dow II*, 2008 WL 4989069, at *2 (explaining that "appoint[ing] a receiver anytime a potential plaintiff states that a dissolved corporation *may* still hold assets" would be "wholly inconsistent with the policies underlying [Sections] 278 and 279" (emphasis added)).

[8] *Cf. In re Krafft-Murphy Co., Inc.*, 82 A.3d at 704 (finding property existed where the petitioner identified specific insurers that provided coverage before the corporation was dissolved); *In re Reinz Wisconsin Gasket, LLC*, 2023 WL 2568326, at *5 (finding "Petitioner has demonstrated good cause to believe that [the company] holds assets, including one or more insurance policies issued to one of its corporate ancestors," where it identified specific insurers and policies); *In re Texas E. Overseas, Inc.*, 2009 WL 4270799, at *6 (explaining that the petitioner "demonstrated a reasonable likelihood, well beyond mere speculation, that [the company] has undistributed assets in the form of rights under one or more insurance policies" by identifying specific insurers covering the claims at issue, as well as board minutes acknowledging the existence, location, and coverage of policies).

Finally, BTA seeks "information and discovery" that could be used to prepare "[a]n equitable account verified by affidavit of all dealings with the BTA Bank employees and/or officers." Pet. ¶ 2; *see also* AB at 7. The Petition does not allege that the Company still has books and records. It appears, instead, that BTA wants a receiver to undertake an investigation and compile information in response to BTA's requests. BTA cites no authority for the proposition that such "information" a receiver might be able to discover through investigation would constitute "property" under Section 279.

Without factual allegations that the Company likely has undistributed property, the Petition fails to adequately plead good cause for the appointment of a receiver.

### B. The Petition Does Not Allege Facts Supporting An Inference That The Company Wrongfully Distributed Assets.

The Petition further fails to plead good cause for the appointment of a receiver under Section 279 because it does not adequately allege that the Company wrongfully distributed assets when it dissolved.

The Petition alleges that, "[o]n information and belief, the monetary assets of the Company either remain with the Company *or were wrongfully distributed* to individuals who took part in or had knowledge of the fraudulent scheme." Pet. ¶ 9

(emphasis added). According to BTA, "the Delaware Court of Chancery has, in other, similar instances, ordered the appointment of a receiver for dissolved entities where the petitioner has acknowledged that assets . . . were wrongfully distributed to insiders." AB at 12.

As BTA notes, this Court has entertained requests to appoint receivers for dissolved entities where the petitioners sought to nullify the certificate of cancellation on the grounds that the company's affairs were not wound up in compliance with the applicable statute. *See, e.g.*, *In re Reinz Wisconsin Gasket, LLC*, 2023 WL 2568326, at *12 (finding good cause to appoint a receiver where the petitioner "demonstrated a reasonable likelihood that [the company] violated Section 18-804(b) when it dissolved because it did not set aside any assets for claimants in actions pending during its dissolution or any future claims"); *Techmer Accel Hldgs., LLC v. Amer*, 2010 WL 5564043, at *12 (Del. Ch. Dec. 29, 2010) ("With the conclusion that Crescent failed to settle and close the Limited Partnership's business because it retained assets and had outstanding liabilities when it cancelled its certificate of limited partnership on April 30, 2009, good cause exists for appointment of a receiver to undertake all activities permitted by § 17-805.").

Here, however, BTA's allegation that the Company may have "wrongfully distributed" assets at the time of dissolution is wholly conclusory. The Petition

pleads no facts about the purported distribution—BTA simply asserts that the Company "wrongfully distributed those assets at a time when it knew or should have known that BTA had claims against it in connection with the fraudulent scheme." AB at 18. The Petition fails to allege that the Company had assets when it dissolved, let alone that such assets were distributed with knowledge of BTA's claims (which were asserted at least twelve years after the challenged transactions and five years after the Company dissolved).[9] Nevertheless, BTA asks that I infer, based solely on the allegation that the Company earned profits through 2009, that it had assets to distribute when it dissolved seven years later in 2016—and, based solely on the allegation that the Company participated in the transactions, that BTA's claims were likely to arise more than a decade later. Such speculation, without more, does not provide good cause for the appointment of a receiver.[10]

---

[9] *See* 8 *Del. C.* § 281(b) (requiring that a dissolved corporation "shall make such provision as will be reasonably likely to be sufficient to provide compensation for claims that have not been made known, or that have not arisen, but that, based on facts known to the corporation . . . are likely to arise or to become known to the corporation or successor entity within 10 years after the date of dissolution").

[10] The parties also debate whether the BVI Complaint asserts a "facially plausible" claim against the Company. *See In re Texas E. Overseas, Inc.*, 2009 WL 4270799, at *5 (explaining that to demonstrate good cause, "the claim to be satisfied . . . through the receiver's efforts must be facially plausible"); *Levin v. Fisk Rubber Corp.*, 52 A.2d 741, 742 (Del. Ch. 1947) ("A court of equity will hardly lend its aid to the prosecution of an action unless there appears to be some reasonable basis for it."). For example, ADM argues that the BVI Complaint concedes the Company repaid BTA "in full" and BTA suffered "no direct losses" from transactions with the Company. *See* OB at 2 (internal quotation

## III.  CONCLUSION

For the reasons explained above, the Petition fails to allege non-conclusory facts that, if true, would provide good cause to appoint a receiver for the Company under Section 279.  Accordingly, I recommend that the Motion to Dismiss be granted and the Petition be dismissed.  This is a final report pursuant to Court of Chancery Rule 144(d)(1).[11]

Sincerely,

*/s/ Bonnie W. David*

Bonnie W. David
Magistrate in Chancery

cc:  All counsel of record (by File & ServeXpress)

---

marks omitted).  Among other arguments, BTA responds that the BVI Court already determined the claims were valid when it issued its service order.  *See* AB at 2.  Because the Petition does not satisfy the threshold requirement of pleading that the Company has undistributed property, I do not reach these arguments.

Separately, ADM seeks dismissal pursuant to Court of Chancery Rule 12(b)(5) because the Petition was not served by publication.  *See, e.g.*, *Tratado de Libre Commercio, LLC v. Splitcast Tech., LLC*, 2019 WL 1057976, at *1 (Del. Ch. Mar. 6, 2019) (requiring service by publication); *In re Krafft-Murphy Co., Inc.*, 2011 WL 5420808, at *4 (Del. Ch. Nov. 9, 2011) (same).  Because the Petition fails to plead good cause for the appointment of a receiver, I do not advise on service.

[11] *See* Ct. Ch. R. 144(d)(1) ("In actions that are not summary in nature or in which the Court has not ordered expedited proceedings, any party taking exception shall file a notice of exceptions within eleven days of the date of the report.").