**COURT OF CHANCERY**
**OF THE**
**STATE OF DELAWARE**

MORGAN T. ZURN
VICE CHANCELLOR

LEONARD L. WILLIAMS JUSTICE CENTER
500 N. KING STREET, SUITE 11400
WILMINGTON, DELAWARE 19801-3734

May 8, 2023

K. Tyler O'Connell, Esquire
Morris James LLP
500 Delaware Avenue, Suite 1500
Wilmington, DE  19801

Kelly E. Farnan, Esquire
Richards, Layton & Finger, P.A.
920 North King Street
Wilmington, DE  19801

RE: ***In re Reinz Wisconsin Gasket, LLC,***
     Civil Action No. 2022-0859-MTZ

Dear Counsel:

Petitioner Linda A. Cook seeks a receiver over a dissolved and purportedly cancelled limited liability company under 6 *Del. C.* § 18-805; she also seeks nullification of Reinz Wisconsin Gasket, LLC's (the "Company" or "RWG") cancellation. Her claims went to trial, with attorneys with the firm Richards, Layton & Finger, P.A. ("Counsel") advocating against the relief sought. Counsel had entered their appearance on behalf of the defunct RWG. In my post-trial opinion, which concluded a receiver should be appointed, I observed it was a puzzling thing for counsel to represent a cancelled company in opposing the imposition of a receiver and nullification of its cancellation.[1] Petitioner followed

---

[1] *In re Reinz Wisconsin Gasket*, 2023 WL 2568326, at *2 n.21 (Del. Ch. Mar. 20, 2023) [hereinafter "Memo. Op."]. I have reproduced the footnote from the March 20, 2023 memorandum opinion ("Memorandum Opinion"), in part, below:

> How the Company can retain counsel and itself appear in this action when it has been cancelled, and counsel insists it should remain cancelled, is a metaphysical wonder. *See* [*In re*] VBR [*Agency, LLC*], 274 A.3d [1068,] 1076 [(Del. Ch. 2022)] (noting the "idiosyncrasies" of litigating against a defunct entity, including the inability to serve through a registered agent); *In re Krafft-Murphy Co., Inc.*, 82 A.3d 696, 710 (Del. 2013) (explaining a dissolved corporation "cease[s] to exist as a 'body corporate'" and can speak only through a receiver after 6 *Del. C.* § 278's three-year winding up period, which period is unique to the corporate setting); *Tratado de Libre Commercio, LLC v. Splitcast Tech.*, LLC, 2019 WL 1057976, at *2 (Del. Ch. Mar. 6, 2019) ('not[ing] that the Delaware Limited Liability Company

with her Motion to Determine Proper Respondent and Counsel (the "Motion"), which was briefed and taken under advisement on April 26, 2023.[2] The Motion is granted in part: Counsel's purported representation of a defunct limited liability company is not only puzzling, but impossible.

## I. BACKGROUND

The Company is a defendant in a pending tort action before the United States District Court for the District of Massachusetts. On July 27, 2022, Petitioner served RWG in that action with a notice of deposition to cover topics including the assets and insurance available to satisfy any judgment in that action. On August 30, the Company's federal counsel indicated the Company would produce a witness; but that same day, the Company filed its notice of dissolution and cancellation.[3] On November 23, 2022, the District Court concluded the Company no longer existed and so granted its federal counsel's motion to withdraw.[4] The Company's federal counsel filed notices of withdrawal on December 14.[5] On March 1, 2023, Petitioner filed a motion for default judgment

---

Act does not contain a three-year wind up provision comparable to 8 *Del. C.* § 278'). [Petitioner] has not raised this issue, and has accepted counsel's work as being on behalf of RWG, as opposed to its former member or other live entity. *See, e.g., Schwaber v. Margalit*, 2022 WL 2719952 (Del. Ch. July 13, 2022); *Schwaber v. Margalit*, C.A. No. 2021-1038-LWW, D.I. 17 (Del. Ch. Dec. 15, 2021) (entry of appearance for the defendant entity that was the general partner of one cancelled defendant entity and the managing member of another, and the president of the live defendant entity); *In re Tex. E. Overseas, Inc.* ("TEO"), 2009 WL 4270799, at *1 (Del. Ch. Nov. 30, 2009) (noting the dissolved corporation was "represented . . . through insurers who may have insured" the subject corporation's predecessor-in-interest), *aff'd*, 998 A.2d 852 (Del. 2010) (TABLE).

[2] Docket Item ("D.I.") 74 [hereinafter "Mot."]; D.I. 79 [hereinafter "Opp."]; D.I. 81; D.I. 82.

[3] Memo. Op., at *1–2.

[4] *Cook v. Foster Wheeler Energy Corp.*, 2022 WL 17177715 (D. Mass. Nov. 23, 2022) [hereinafter "Mass. Op."].

[5] *Cook v. Foster Wheeler Energy Corp.*, C.A. No. 1:21-cv-11362-RWZ, D.I. 426, D.I. 427, D.I. 428 (D. Mass. Dec. 14, 2022).

against RWG in the federal action because it was unrepresented by counsel and could not represent itself, and requested the court schedule a damages hearing at the same time as trial.[6] The District Court granted Petitioner's motion and entered an order to that effect on April 14.[7] The federal jury trial is scheduled for September 11, 2023.[8]

In September 2022, Petitioner came to Delaware and filed this action seeking a receiver and nullification of RWG's certificate of cancellation. On October 19, 2022, Counsel entered their appearance purportedly on behalf of RWG.[9] The record would show that RWG's sole member, DCo LLC, paid for Counsel's time in this litigation.[10] For purposes of my post-trial opinion dated March 20, 2023, I accepted Counsel's litigation positions, referring to their client merely as "Respondent." I asked the parties to address the puzzle of a dissolved and cancelled entity appearing to litigate the propriety of its cancellation before they submitted proposed receivers.[11]

---

[6] *Cook v. Foster Wheeler Energy Corp.*, C.A. No. 1:21-cv-11362-RWZ, D.I. 461 (D. Mass. Mar. 1, 2023). On November 15, 2022, Petitioner filed a motion for partial summary judgment against the Company in the federal action. *Cook v. Foster Wheeler Energy Corp.*, C.A. No. 1:21-cv-11362-RWZ, D.I 375, D.I. 376, D.I. 377, D.I. 451, D.I. 452, D.I. 453 (D. Mass. Nov. 15, 2022). The District Court heard that motion on April 11, 2023. *Cook v. Foster Wheeler Energy Corp.*, C.A. No. 1:21-cv-11362-RWZ, D.I. 468 (D. Mass. Apr. 11, 2023).

[7] *Cook v. Foster Wheeler Energy Corp.*, C.A. No. 1:21-cv-11362-RWZ, D.I. 469 (D. Mass. Apr. 14, 2023).

[8] *Cook v. Foster Wheeler Energy Corp.*, C.A. No. 1:21-cv-11362-RWZ, D.I. 464 (D. Mass. Mar. 6, 2023).

[9] D.I. 10.

[10] JX 178 at 20:15–22*; id.* at 20:17–19 ("DCo chose to employ attorneys to defend Reinz in this Chancery case."); JX 182 at 22:3–16 (testifying DCo paid for the time of Reinz's corporate representative to be deposed).

[11] Memo. Op., at *2 n.21; *id.* at *15. Counsel contend that by asking the "parties" to work towards submitting proposed receivers, I committed to permitting RWG to participate in that process. Opp. ¶ 22. Not so: I instructed counsel to address the

The Motion asks the Court to strike Counsel's entry of appearance; to preclude Counsel's representation of DCo, its parent company Enstar,[12] or any former RWG manager; and to leave the identification of three possible receivers to Petitioner alone, to the exclusion of Counsel. Counsel oppose all three forms of relief. The parties spar over a handful of authorities. I read them to preclude Counsel's representation of RWG, at least unless and until a receiver is appointed or its cancellation is nullified.

## II. ANALYSIS

Petitioner and Counsel agree on one principle of Delaware law: in an action to nullify a certificate of cancellation and to appoint a receiver over a dissolved and cancelled Delaware entity, that entity must be named as a respondent.[13] They also agree that entity must be served by publication or other means, not by serving its former registered agent.[14] They diverge on whether the entity can retain counsel and speak on its own behalf in that action.

Cancellation precludes a defunct entity from retaining counsel and litigating before a receiver is appointed, even in a proceeding in which it must be named as a

---

representation issue before submitting proposed receivers. Memo. Op., at *2 n.21; *id.* at *15.

[12] The Memorandum Opinion explains: "In 2016, an Enstar Group Limited subsidiary, Enstar Holdings (US) Inc. acquired Dana Corp.'s interest as the sole member of Dana Companies, LLC, and RWG; Dana Companies, LLC remained as RWG's sole member. Following the acquisition, Dana Companies, LLC and Enstar (US) Inc. ('Enstar'), a wholly-owned subsidiary of Enstar Holdings (US) Inc., became parties to an administrative services agreement whereby Enstar employees render certain services to Dana Companies, LLC. Dana Companies, LLC would change its name to DCo LLC." Memo. Op., at *9 (footnotes omitted). The Motion does not specifically identify an Enstar entity.

[13] *Harned v. Beacon Hill Real Estate Co.*, 84 A. 229, 234–35 (Del. 1912); *In re Krafft-Murphy Co., Inc.*, 2011 WL 5420808, at *3 (Del. Ch. Nov. 9, 2011); *Tratado de Libre Commercio*, 2019 WL 1057976, at *2.

[14] *VBR*, 274 A.3d at 1076; *Tratado de Libre Commercio*, 2019 WL 1057976, at *1–2.

respondent.[15]  By statute, a limited liability company's existence "as a separate legal entity shall continue until cancellation of the limited liability company's certificate of formation."[16]  When a certificate of cancellation is filed for an entity, its "existence as [a] jural entit[y] cease[s]."[17]  Its "legal existence ends."[18]  A defunct entity ceases to be a "body corporate."[19]  Because the entity is no longer viable, it "no longer has a registered agent or active senior officers."[20]  The entity only exists insofar as it can hold assets and be guided by an appointed receiver, and the officers serving at the time of cancellation only "retain their positions to the extent that they may be called upon to answer for the [entity] after it has been dissolved and they have been discharged from their positions."[21]  After a certificate of cancellation has been filed, a defunct entity may speak only through a receiver to manage litigation or any other outstanding business:  the receiver is appointed because there are no other fiduciaries to make decisions for the entity.[22]  A defunct

---

[15] I use the phrase "defunct entity" to refer to a cancelled alternative entity or a cancelled corporation after its three-year winding-up period in 8 *Del. C.* § 278, which alternative entities do not enjoy.  Other than that difference, authorities interpreting 8 *Del. C.* § 279 are persuasive when interpreting 6 *Del. C.* § 18-805.  *Matthew v. Laudamiel*, 2012 WL 605589, at *21 (Del. Ch. Feb. 21, 2012) (citing *Travelcenters of Am., LLC v. Brog*, 2008 WL 868107, at *2 n. 2 (Del. Ch. Mar. 26, 2008)).

[16] 6 *Del. C.* § 18-201(b).

[17] *VBR*, 274 A.3d at 1071; *accord Techmer Accel Hldgs., LLC v. Amer*, 2010 WL 5564043, at *10 (Del. Ch. Dec. 29, 2010) (explaining a certificate of cancellation "cancelled Crescent Gate's certificate of formation, and caused Crescent Gate no longer to exist as a separate legal entity").

[18] *Krafft-Murphy*, 2011 WL 5420808, at *6.

[19] *Id.* at *9.

[20] *Tratado de Libre Commercio*, 2019 WL 1057976, at *1.

[21] *Krafft-Murphy*, 2011 WL 5420808, at *4; *see Harned*, 84 A. at 234–35.

[22] 6 *Del. C.* § 18-803(b); 6 *Del. C.* § 18-805; *Laudamiel*, 2012 WL 605589, at *21 (noting derivative claims belonging to a defunct LLC must be brought in the LLC's name by a trustee or receiver appointed under Section 18-805, or by the LLC if its cancellation is nullified); *see Ross Hldg. & Mgmt Co. v. Advance Realty Gp., LLC*, 2010 WL 3448227, at *5 (Del. Ch. Sept. 2, 2010) (noting Section 18-805 is the only provision in the LLC Act addressing appointment of a receiver, which allows for such appointment only when

entity cannot otherwise make any decisions or take any action. It follows that a defunct entity cannot retain counsel or speak through counsel unless and until a receiver or other fiduciary is appointed.[23]

To argue to the contrary, Counsel rely on *Harned v. Beacon Hill Real Estate* from the 1912 Delaware Supreme Court, contending it supports not only the proposition that a defunct entity can and should be named as a defendant when a receiver is sought, but also that it can retain its own counsel.[24] I read *Harned* to

---

a limited liability company's certificate of formation has been cancelled); *e.g.*, *Techmer*, 2010 WL 5564043, at *11–12 (noting a receiver must be appointed for a cancelled partnership to conduct its business); *TEO*, 2009 WL 4270799, at *3 ("'[T]he statutory scheme [established by 8 *Del. C.* §§ 278, 279] seems to contemplate two situations,' one in which the corporation maintains its status as a legal entity 'and is capable of winding up its affairs through its own officers and directors,' and the other in which the corporation no longer has legal existence, and therefore requires a receiver or trustee to oversee its 'unfinished business.'" (citations omitted) (quoting *In re Citadel Indus., Inc.*, 423 A.2d 500, 504 (Del. Ch. 1980))), *aff'd*, 998 A.2d 852 (Del. 2010).

[23] *See Motors Liquid. Co. Avoidance Action Tr. v. Oaktree Loan Fund, L.P.*, 2018 WL 2338574, at *1 (Del. Ch. May 23, 2018) (noting that in actions to nullify certificates of cancellation and to appoint an independent receiver, the defunct entities were steered and represented by a trustee or receiver in those actions); *cf. Phoenix Process Equip. Co. v. Cap. Equip. & Trading Corp.*, 2022 WL 4687025, at *7–8 (W.D. Ky. Sept. 30, 2022) ("Delaware law is clear, and the Court cannot find that any equitable considerations should apply here to supersede the dissolution statutes' requirement that a receiver or body corporate be appointed to act on Technology Corp.'s behalf. In sum, under Delaware law, without appointment of a receiver or body corporate, Technology Corp. lacks capacity to sue or be sued [after its three-year wind-up period]."); *Select Brokerage Servs., Inc. v. Asset Bldg. Consultants, Ltd.*, 2011 WL 283186, at *2 (W.D. Pa. Jan. 26, 2011) ("Accordingly, Petitioners are not restricted by the general rule that a law firm may not withdraw from representing a corporation before the corporation retains new counsel because ABC is no longer a legal corporation."); *S.E.C. v. Diversified Corp. Consulting Gp.*, 378 F.3d 1219, 1228 (11th Cir. 2004) ("One wonders how [a dissolved] entity hires a lawyer, defends itself at trial, and takes an appeal, and why it would even bother to do so."); *Kahn v. Lesser*, 18 N.Y.S. 98, 98 (N.Y. Com. Pl. 1892) ("[F]or, the partnership being dissolved, they had no power to retain an attorney for him.").

[24] 84 A. 229.

support the first statement, but not the second. To be sure, in *Harned*, the defunct entity subject to an action to appoint a receiver purportedly "authorized an appearance to the action, and under its corporate seal filed an answer to the bill of complaint signed b[y] persons who were its president and directors at the time of dissolution"—"so[] far as it was able to do so."[25] But the Delaware Supreme Court was clear that it was not commenting on this purported retention of counsel and actions by former company agents: it emphasized that "the only question for this court to determine is whether it was competent, legal and proper to make the corporation defendant in the proceeding below."[26] *Harned* answered that question in the affirmative.[27] It studiously did not rule on whether the defunct entity could retain counsel and take action in litigation through its former officers. Instead, the *Harned* Court qualified its description of the defunct entity's purported actions ("so[] far as it was able to do so")[28] and pointed out that it had admitted all of the allegations in the petition.[29]

In addition to *Harned*, Counsel point to two other cases in which counsel entered their appearance purportedly on behalf of the defunct entity, as well as other related entities and individuals.[30] That something has happened before

---

[25] *Id.* at 234.

[26] *Id.*; *see id*. at 233 (noting that in the trial court proceeding, "the company was made party defendant, appearance was entered for the company by its solicitor, and an answer was filed, under its corporate seal, signed by the president and two directors, and attested by the secretary of the company," and that on appeal, "while there were several errors assigned, there is practically but one question raised and to be determined, viz.: Whether the company could be made party defendant in the proceeding instituted below for the appointment of a receiver").

[27] *Id.* at 234.

[28] *Id.*

[29] *Id.* ("By its answer the company admitted the truth of the allegations set forth in the bill, and submitted to such order, as the court might make in the premises.").

[30] *Thor Merritt Square, LLC v. Bayview Malls LLC*, 2010 WL 972776, at *1 (Del. Ch. Mar. 5, 2010); *see id.* at *5 n.18 (noting that the dissolved entity certainly had the "capacity to be sued" but making no comment on its representation); *Coyne v. Fusion Healthworks, LLC*, 2019 WL 1952990, at *10 (Del. Ch. Apr. 30, 2019).

without being identified as a problem does not make it legally correct, particularly where neither case specifically discussed the entry of appearance and where counsel spoke on behalf of viable litigants as well as the defunct entity. Petitioner and the Court have identified other cases in which represented opposition came not from the defunct entity itself, but from trustees or receivers for the defunct entity,[31] or from other interested parties like insurers and former members.[32]

Finally, Counsel essentially argue that because DCo funded Counsel's work, that arrangement is tantamount to Counsel properly representing DCo in this matter, rather than RWG.[33] This argument underestimates the significance of the client in an attorney-client relationship. RWG was not a jural entity, and so its member cannot have bound it to an agreement for legal services.[34] Nor can there be an implied attorney-client relationship between RWG and Counsel because RWG cannot have "believe[d] that the attorney was acting on its behalf as its

---

[31] *Motors Liquid.*, 2018 WL 2338574, at *1.

[32] *See, e.g., Schwaber*, 2022 WL 2719952; *Schwaber v. Margalit*, C.A. No. 2021-1038-LWW, D.I. 17 (Del. Ch. Dec. 15, 2021) (entry of appearance for the defendant entity that was the general partner of one cancelled defendant entity and the managing member of another, and the president of the live defendant entity); *TEO*, 2009 WL 4270799, at *1 (noting the dissolved corporation was "represented . . . through insurers who may have insured" the subject corporation's predecessor-in-interest); *see also Techmer*, 2010 WL 5564043 (engaging with positions taken by the defunct entity's managing member, who was named as a defendant).

[33] Opp. ¶¶ 13, 17.

[34] *See Farmers Bank of Willards v. Becker*, 2011 WL 3925428, at *3 (Del. Super. Aug. 19, 2011) ("Whether an attorney-client relationship exists depends on the facts and circumstances of a particular case. The most significant fact or circumstance is whether the attorney and client entered into an express agreement for legal services." (footnotes and citations omitted)); *see also SBC Interactive, Inc. v. Corp. Media P'rs*, 1997 WL 770715, at *4 (Del. Ch. Dec. 9, 1997) ("[W]hether an attorney-client relationship arises depends upon the facts and circumstances of the case. Normally the most critical fact or circumstance is a formal agreement that the attorney giving the advice is or will be the lawyer for the party involved." (footnote omitted)).

counsel."[35]  The fact that DCo has paid Counsel's bills does not fix the fact that RWG never retained Counsel.

RWG has been cancelled and without a decisionmaker throughout Counsel's purported representation in this action.  I must conclude that Counsel have never actually represented RWG before this Court.  Having shared my view on the law, I leave it to Counsel to withdraw their purported appearances.

Just as RWG's cancellation precluded it from entering into an attorney-client relationship, RWG as a defunct entity cannot hold an attorney-client privilege.[36]  The District Court observed the same in granting federal counsel's motion to withdraw upon RWG's cancellation.[37]

---

[35] *See Dollar Tree, Inc. v. Dollar Express LLC*, 2017 WL 5624298, at *4 (Del. Ch. Nov. 21, 2017) ("In the absence of an express contract or formal retainer agreement, determining the existence of an attorney-client relationship is a fact-intensive inquiry that depends on the circumstances of each case.  In determining the existence of an attorney-client relationship, courts look at the contacts between the potential client and its potential lawyers to determine whether it would have been reasonable for the 'client' to believe that the attorney was acting on its behalf as its counsel." (quoting *Benchmark Cap. P'rs IV, L.P. v. Vague*, 2002 WL 31057462, at *3 (Del. Ch. Sept. 3, 2002)); *SBC Interactive*, 1997 WL 770715, at *4 ("[T]here would have to be, at the very least, a preexisting relationship that would create a reasonable expectation on the 'client's' part that the attorney was representing [its] interests, and reliance by the client upon that expectation.").

[36] *E.g.*, *In re KiOR, Inc.*, 621 B.R. 313, 325 (Bankr. D. Del. 2020) ("Absent some compelling reason to the contrary, the attorney client privilege does not survive the death of the corporation. . . .  A completely defunct company should not be allowed to assert privilege, regardless of whether it has technically maintained its legal status." (quoting *Off. Comm. of Admin. Claimants ex rel. LTV Steel Co. v. Moran*, 802 F. Supp. 2d 947, 949 (N.D. Ill. 2011)) (collecting cases)).

[37] Mass. Op.,  at *1 ("Notably, '[t]he attorney client privilege does not survive the death of the corporation.'" (quoting *LTV Steel Co.*, 802 F. Supp. 2d at 949)); *id.* at *1 (noting "fully dissolved corporations may not assert the attorney-client privilege" (internal quotation marks omitted) (quoting *LTV Steel Co.*, 802 F. Supp. 2d at 949, and then quoting *City of Rialto v. U.S. Dep't of Def.*, 492 F. Supp. 2d 1193, 1200–01 (C.D. Cal. 2007))); *United States v. Cole*, 569 F. Supp. 3d 696, 700–01 (N.D. Ohio 2021) ("In

* * *

Having concluded RWG's cancellation precluded its representation, I pause to note I am not the first to come to this conclusion. After RWG was cancelled, RWG's counsel in the federal tort action moved for leave to withdraw, and expounded at length that they could not represent RWG because RWG did not exist. An excerpt from the reply in support of the motion to withdraw follows:

> Since Reinz Wisconsin ceased to exist on August 30, 2022, undersigned counsel is appearing on their own behalf, not on behalf of Reinz Wisconsin, for the limited purpose of responding to Plaintiff's opposition to their motion to withdraw as counsel for Reinz Wisconsin.
>
> Plaintiff's arguments ignore a fundamental issue – Reinz Wisconsin no longer exists under Delaware law, and undersigned counsel cannot represent an entity that does not exist.
>
> . . .
>
> [A]s of the filing of its certificate of cancellation on August 30, 2022, Reinz Wisconsin ceased to have any legal existence, and thus there is no longer any client for undersigned counsel to represent in this matter. . . . Delaware law makes clear that once an LLC has filed its certificate of cancellation, the LLC no longer exists and has no legal capacity to participate in litigation. . . . In other words, following dissolution, an LLC can continue to 'prosecute and defend suits,' but that authority ends once the LLC files a certificate of cancellation.
>
> . . .

---

federal courts, the 'weight of authority . . . holds that a dissolved or defunct corporation retains no privilege.'" (quoting *S.E.C. v. Carrillo Huettel LLP*, 2015 WL 1610282, at *2 (S.D.N.Y. Apr. 8, 2015)) (collecting cases)), *appeal dismissed*, 2022 WL 1462465 (6th Cir. Feb. 17, 2022).

> In short, whether or not Reinz Wisconsin's cancellation was a 'sham' . . . unless and until a nullification of the certificate of cancellation occurs in Delaware or a receiver is appointed in Delaware, Reinz Wisconsin cannot continue to participate in this action since it no longer exists as an entity. Reinz Wisconsin's lack of legal capacity, in turn, means no individual or entity exists with the authority to make decisions concerning Reinz Wisconsin's potential liabilities or otherwise direct counsel in this litigation. It follows that undersigned counsel has no role to play in this lawsuit . . . .
>
> . . .
>
> Absent a decision by the Delaware Chancery Court granting the relief sought in th[e] petition [attacking Reinz Wisconsin's cancellation], Reinz Wisconsin lacks the capacity to participate in ongoing litigation and so there simply is no client for undersigned counsel to represent.[38]

The District Court granted the motion to withdraw, finding that "a dissolved corporation does not have the protection of attorney-client relationships because, fundamentally, there is no longer a client."[39]

## III. CONCLUSION

Because RWG is cancelled and lacks a decisionmaker, RWG cannot participate in the process of appointing its own receiver or retain counsel to do so. I am unwilling to delay the warranted appointment of a receiver, while the federal tort action proceeds in order to indulge DCo or any other interested party in entering their appearance and participating in identifying a suitable receiver. I ask Petitioner to submit three names to the Court and a proposed order of appointment.

---

[38] Mot. Ex. 2, at 1–6 (quoting 6 *Del. C.* § 18-803 and citing cases); *see also* Mot. Ex. 3, at 5 ("[B]ecause [RWG] dissolved and filed their certificate of cancellation in Delaware, so we have a situation where we're counsel of record without a client to represent.").

[39] Mass. Op., 2022 WL 17177715, at *1.

In the interest of prompt appointment of a receiver, and because I cannot predict how third parties will react to this decision, I will not opine on Petitioner's request to disqualify Counsel from representing any other interested party unless and until Counsel enters their appearance.

Sincerely,

*/s/ Morgan T. Zurn*

Vice Chancellor

MTZ/ms

cc: All Counsel of Record, via *File & ServeXpress*