## IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | |
|---|---|
| IN RE: NEW MEDIA INVESTORS II, LLC, a Delaware limited liability company. | C.A. No. 2024-0413-LWW |

## MEMORANDUM OPINION

Date Submitted: October 14, 2025
Date Decided: January 27, 2026

David H. Holloway, SHLANSKY LAW GROUP, LLP, Wilmington, Delaware; Colin R. Hagan, David J. Shlansky, SHLANSKY LAW GROUP, LLP, Chelsea, Massachusetts; *Attorneys for Plaintiffs Felicia Gross and Sheila Nassberg*

Richard M. Beck, Sally E. Veghte, KLEHR HARRISON HARVEY BRANZBURG LLP, Wilmington, Delaware; Brian E. Whitely, Henry Gaylord, BARCLAY DAMON LLP, Boston, Massachusetts; *Attorneys for Plaintiff Paul Fireman*

Jody C. Barillare, Laura Hughes McNally, Amy M. Dudash, Brian Loughnane, MORGAN, LEWIS & BOCKIUS LLP, Wilmington, Delaware; Michael D. Blanchard, Matthew C. McDonough, MORGAN, LEWIS & BOCKIUS LLP, Boston, Massachusetts; *Attorneys for Defendant Robert A. Maginn, Jr. and New Media Investors II-C, LLC*

Andrew D. Cordo, Lauren DeBona Zlotnick, Ashleigh L. Herrin, WILSON SONSINI GOODRICH & ROSATI, P.C., Wilmington, Delaware; *Attorneys for Defendant Jamison Barr*

Neil R. Lapinski, Phillip A. Giordano, Madeline R. Silverman, GORDON, FOURNARIS & MAMMARELLA, P.A., Wilmington, Delaware; *Attorneys for Defendant Ling Chai*

Albert H. Manwaring, IV, Kirsten A. Zeberkiewicz, Aubrey J. Morin, MORRIS JAMES LLP, Wilmington, Delaware; *Attorneys for Defendant Jenzabar, Inc.*

Thad J. Bracegirdle, Sarah T. Andrade, BAYARD, P.A.; *Attorneys for Defendants D. Quinn Mills and Olga Perera San Miguel, Independent Executor of the Estate of Joseph Girard San Miguel, Deceased*

**WILL, Vice Chancellor**

Several years ago, this court awarded money damages to the former members of New Media Investors II-B, LLC due to the managing member's usurpation of a corporate opportunity. That judgment spawned multiple related lawsuits. This time, the suit arises from the ashes of New Media Investors II, LLC—an entity that has been canceled for over six years. The plaintiffs, its former members, allege that New Media II's assets and opportunities were looted by the same former manager previously found liable.

This case, however, suffers from a fatal flaw that distinguishes it from the prior matter. The threshold issue here is standing. The plaintiffs' claims are derivative, but the entity on whose behalf they sue ceased to exist long before this action commenced. Although the plaintiffs recently moved to revive the entity, they cannot confer retroactive standing to cure a defect that existed when this suit was filed.

The plaintiffs' lack of derivative standing deprives this court of subject matter jurisdiction. The action is dismissed without prejudice.

## I.    BACKGROUND

The following facts are drawn from the Second Amended Consolidated Verified Complaint and the documents it incorporates by reference.[1]

---

[1] Second Am. Consol. Verified Compl. (Dkt. 60) ("Second Am. Compl."); *see Freedman v. Adams*, 2012 WL 1345638, at *5 (Del. Ch. Mar. 30, 2012) ("When a plaintiff expressly refers to and heavily relies upon documents in her complaint, these documents are

## A. New Media II and the Parties

Nominal defendant New Media Investors II, LLC was a Delaware limited liability company formed in 1999 to hold securities in defendant Jenzabar, Inc.[2] Defendant Robert A. Maginn, Jr. served as New Media II's managing member from its formation to its eventual cancellation in 2017.[3] He simultaneously served as Jenzabar's Chairman and, at times, its Chief Executive Officer.[4]

Several other former fiduciaries of New Media II are also defendants. Ling Chai, Dr. Daniel Quinn Mills, and Joseph San Miguel (deceased) are former or current Jenzabar directors.[5] Jamison Barr is Jenzabar's former General Counsel.[6]

## B. The Alleged Misconduct

Plaintiffs Felicia Gross, Sheila Nassberg, and Paul Fireman are former New Media II members.[7] They allege three primary patterns of misconduct by Maginn

---

considered to be incorporated by reference into the complaint[.]" (citation omitted)); *In re Books-A-Million, Inc. S'holders Litig.*, 2016 WL 5874974, at *1 (Del. Ch. Oct. 10, 2016) (stating that the court can take judicial notice of "facts that are not subject to reasonable dispute" (citation omitted)).

[2] Second Am. Compl. ¶¶ 4, 31. New Media II is a Delaware limited liability company. *Id.* Jenzabar is a Delaware corporation, with its principal place of business in Boston, Massachusetts. *Id.* ¶ 14.

[3] *Id.* ¶ 31.

[4] *Id.* ¶ 32.

[5] *Id.* ¶¶ 16-18. Since San Miguel passed away in 2023, the case has since been defended by the independent executor of his estate. *See* Dkt. 56.

[6] Second Am. Compl. ¶ 19.

[7] *Id.* ¶¶ 11-13.

2

and the individual defendants. All purported acts center on the diminution of New Media II's assets for the benefit of Jenzabar and Maginn.

First, between 2004 and 2011, the defendants are accused of undertaking "churning transactions" that dissipated the value of New Media II's assets.[8] According to the plaintiffs, Maginn caused New Media II to trade its "free-and-clear" Jenzabar common stock for warrants that carried restrictive conditions.[9] These transactions allegedly lacked a genuine business purpose and served only to siphon value from New Media II to Maginn.[10]

Second, in 2011, Maginn and Jenzabar's board allegedly manipulated valuations to prevent New Media II from exercising its remaining warrants, rendering them worthless.[11] The warrants had an exercise price of $0.89 per share and a "cashless exercise" feature that was available if the stock's fair market value exceeded the strike price.[12] The plaintiffs claim that the defendants engineered a valuation showing Jenzabar's common stock was worth only $0.66 per share, leaving the warrants "out of the money" and blocking a cashless exercise.[13] This

---

[8] *Id.* ¶¶ 10, 45, 153, 166.

[9] *Id.* ¶¶ 7, 43-44.

[10] *Id.* ¶¶ 27, 45-46, 153, 164-66.

[11] *Id.* ¶¶ 52, 60, 62, 156.

[12] *Id.* ¶¶ 40, 58-59.

[13] *Id.* ¶¶ 52, 62-63, 156.

valuation was supposedly false, as Jenzabar was simultaneously repurchasing identical common stock from another investor for approximately $2.85 per share.[14] By enforcing the $0.66 valuation, the defendants allegedly caused the warrants to expire unexercised, stripping New Media II of substantial value.[15]

Finally, in 2012 and 2013, Maginn purportedly usurped a corporate opportunity belonging to New Media II.[16] The plaintiffs allege that Jenzabar issued new warrants intended for New Media II, but Maginn diverted them to New Media Investors II-C, LLC—a separate entity he controlled.[17] According to the plaintiffs, this diversion stripped New Media II of an asset worth approximately $55 million.[18]

## C.    The Dissolution and Cancellation

After these events, in December 2013, Maginn sent New Media II members letters stating that their investments were "concluded" and enclosing a "final check" and release.[19]

---

[14] *Id.* ¶¶ 52, 56, 59, 62, 156.

[15] *Id.* ¶¶ 52, 157, 167.

[16] *Id.* ¶¶ 9, 30, 40, 158, 178.

[17] *Id.* ¶¶ 79, 83-84, 86, 159, 170.

[18] *Id.* ¶ 110.

[19] *Id.* ¶¶ 91, 95.

Four years later, in December 2017, Maginn filed a certificate of cancellation for New Media II with the Delaware Secretary of State.[20] New Media II's registration was revoked and nullified at that time.[21]

### D. The *Deane* Litigation

In December 2016, members of New Media Investors II-B, LLC—a sister entity to New Media II—filed a lawsuit against Maginn in Delaware Superior Court, which was later re-filed in this court (*Deane v. Maginn*).[22] The *Deane* plaintiffs alleged that Maginn breached his fiduciary duties by usurping the opportunity to acquire the 2012 warrants, which belonged to New Media II-B.[23]

After a trial, this court issued a post-trial decision in *Deane* on November 1, 2022. I found that Maginn had breached his duty of loyalty to New Media II-B by diverting the 2012 warrants to New Media II-C.[24] Damages exceeding $25.4 million

---

[20] *See Entity Details, New Media Investors II, L.L.C.*, Dep't of State: Div. of Corps., https://icis.corp.delaware.gov/ (last visited Jan. 6, 2026); *see also Swift v. Hou. Wire & Cable Co.*, 2021 WL 5763903, at *2 n.14 (Del. Ch. Dec. 3, 2021) (providing that "[t]he court may take judicial notice of filings with the Delaware Secretary of State").

[21] Second Am. Compl. ¶ 220.e.

[22] *Deane v. Maginn*, 2022 WL 16557974, at *7 (Del. Ch. Nov. 1, 2022), *aff'd*, 338 A.3d 1292 (Del. 2025) (TABLE).

[23] *Id.* at *14-15.

[24] *Id.* at *19.

were awarded to New Media II-B and distributed pro rata to its members.[25] The Delaware Supreme Court affirmed that decision on January 31, 2025.[26]

### E. This Litigation

On April 22, 2024, this lawsuit was filed against Jenzabar, Maginn, Mills, San Miguel, Chai, Barr, New Media II-C, and on behalf of nominal defendant New Media II.[27] The plaintiffs rely heavily on the findings in *Deane* to support their claims regarding the usurpation of the same warrants, which they allege also belonged to New Media II. Their operative Second Amended Consolidated Complaint (the "Complaint") was filed on June 25, 2025, advancing claims for breach of fiduciary duty (Count III), waste (Count IV), misappropriation (Count V), aiding and abetting (Count VI), and tortious interference with business relations (Count VIII).[28] It also seeks three declaratory judgments (Counts I, II, and IX) and indemnification (Count VII).[29]

---

[25] *Id.* at *23, *28-29.

[26] *Maginn v. Deane*, 338 A.3d 1292 (Del. 2025) (TABLE).

[27] Verified Compl. (Dkt. 1); Second Am. Compl. 14-21. This suit was consolidated with *Fireman v. Maginn et al.*, C.A. No. 2024-1357-LWW. Dkts. 52, 58. Another former New Media II member, Till Vestring, filed a motion for permissive joinder, which was denied as procedurally improper. Dkts. 40, 57.

[28] Second Am. Compl. ¶¶ 149-62 (Count III); *id.* ¶¶ 163-73 (Count IV), *id.* ¶¶ 174-79 (Count V); *id.* ¶¶ 180-90 (Count VI); *id.* ¶¶ 197-203 (Count VIII).

[29] *Id.* ¶¶ 130-48 (Counts I through II); *id.* ¶¶ 204-20 (Count IX); *id.* ¶¶ 191-96.

Eleven months after commencing this suit, on March 26, 2025, the plaintiffs filed a certificate of correction with the Delaware Secretary of State.[30] That filing was an attempt to nullify the 2017 cancellation of and to revive New Media II. Several months later, on July 9, 2025, the plaintiffs moved to nullify the cancellation of New Media II's registration.[31] The defendants opposed the motion.[32]

On July 25, the defendants each moved to dismiss the Complaint under Court of Chancery Rule 12(b)(6).[33] The plaintiffs filed answering briefs in opposition to

---

[30] Pls.' Renewed Mot. to Nullify the Purported Cancellation of New Media II's Del. Registration (Dkt. 63) Ex. B (Certificate of Correction of a Limited Liability Company, dated Mar. 26, 2025).

[31] Pls.' Renewed Mot. to Nullify the Purported Cancellation of New Media II's Del. Registration (Dkt. 63); *see also* Pls.' Reply in Supp. of Renewed Mot. to Nullify (Dkt. 101). The renewed motion to nullify followed an earlier motion to nullify filed June 25, 2024. Mot. to Nullify the Purported Cancellation of New Media II's Del. Registration (Dkt. 27). The parties agreed to resolve the motion to nullify alongside the motions to dismiss. Dkt. 62 (Stipulation and [Proposed] Order Amending Caption and Setting Briefing Schedules) (stating that "the parties . . . have agreed to have [both] motions heard on October 14, 2025"); Dkt. 64.

[32] Dkts. 76-81.

[33] Opening Br. in Supp. of Def. Jamison Barr's Mot. to Dismiss Pls.' Second Am. Compl. (Dkt. 66); Def. Jenzabar's Opening Br. in Supp. of Mot. to Dismiss the Second Am. Compl. (Dkt. 67) ("Jenzabar's Opening Br."); Def. Ling Chai's Opening Br. in Supp. of Mot. to Dismiss Pls.' Second Am. Compl. (Dkt. 69); Robert A. Maginn, Jr.'s and New Media Investors II-C, LLC's Opening Br. in Supp. of Mot. to Dismiss Verified Compl. (Dkt. 71) ("Maginn and New Media II-C's Opening Br."); Opening Br. of Defs. D. Quinn Mills and Olga Perera San Miguel in Supp. of Mot. to Dismiss Pls.' Second Am. Compl. (Dkt. 73).

each motion on August 25.[34]  On September 24, reply briefs in further support of the motions to dismiss were filed.[35]

Oral argument on the motion to nullify and motions to dismiss was held on October 14, 2025, after which the motions were taken under advisement.[36]

## II.   LEGAL ANALYSIS

The defendants move for dismissal under Court of Chancery Rule 12(b)(6) for failure to state a claim upon which relief can be granted.[37]  In resolving the motions, I must "(1) accept all well pleaded factual allegations as true, (2) accept even vague allegations as 'well pleaded' if they give the opposing party notice of the claim, [and] (3) draw all reasonable inferences in favor of the non-moving party."[38]  I am not, however, required to "accept every strained interpretation of [the plaintiffs']

---

[34] Pls.' Answering Br. in Opp'n to Def. Jamison Barr's Mot. to Dismiss (Dkt. 83); Pls.' Answering Br. in Opp'n to Def. Ling Chai's Mot. to Dismiss (Dkt. 84); Pls.' Answering Br. in Opp'n to Defs. D. Quinn Mills' and Olga Perera San Miguels' Mot. to Dismiss (Dkt. 85); Pls.' Answering Br. in Opp'n to Defs. Robert A. Maginn Jr.'s and New Media Investors II-C, LLC's Mot. to Dismiss (Dkt. 86) ("Pls.' Opp'n to Maginn and New Media II-C"); Pls.' Answering Br. in Opp'n to Def. Jenzabar's Mot. to Dismiss (Dkt. 87) ("Pls.' Opp'n to Jenzabar"); Paul Fireman's Joinder in Opp'n to Mot. to Dismiss (Dkt. 88).

[35] Jamison Barr's Reply Br. in Supp. of Mot. to Dismiss (Dkt. 93); Ling Chai's Reply Br. in Supp. of Mot. to Dismiss (Dkt. 94); Jenzabar, Inc's Reply Br. in Supp. of Mot. to Dismiss (Dkt. 95); Robert A. Maginn, Jr.'s and New Media Investors II-C, LLC's Reply Br. in Supp. of Mot. to Dismiss (Dkt. 96); D. Quinn Mills's and Olga Perera San Miguels's Reply Br. in Supp. of Mot. to Dismiss (Dkt. 97).

[36] Dkt. 103.

[37] Ct. Ch. R. 12(b)(6).

[38] *Cent. Mortg. Co. v. Morgan Stanley Mortg. Cap. Hldgs. LLC*, 27 A.3d 531, 535 (Del. 2011) (citing *Savor, Inc. v. FMR Corp.*, 812 A.2d 894, 896-97 (Del. 2002)).

8

allegations"[39] or conclusory statements "unsupported by allegations of specific facts."[40] Dismissal is appropriate only if the plaintiffs cannot "recover under any reasonably conceivable set of circumstances susceptible of proof."[41]

The defendants raise three gating issues that must be addressed before reaching the merits: first, whether the plaintiffs' claims are direct or derivative; second, whether the plaintiffs have standing to sue; and third, whether the court has subject matter jurisdiction over this action.[42] I conclude that the claims are derivative and that the plaintiffs lack standing to pursue them. Consequently, the court lacks subject matter jurisdiction. The motions to dismiss are granted on that basis, and the Complaint is dismissed without prejudice.

## A. The *Tooley* Test

First, the defendants assert that the plaintiffs' nine claims are derivative.[43] The plaintiffs purport to plead every claim as both direct and derivative.[44] In briefing,

---

[39] *In re Gen. Motors (Hughes) S'holder Litig.*, 897 A.2d 162, 168 (Del. 2006).

[40] *In re Lukens Inc. S'holders Litig.*, 757 A.2d 720, 727 (Del. Ch. 1999), *aff'd sub nom.*, *Walker v. Lukens, Inc.*, 757 A.2d 1278 (Del. 2000).

[41] *Savor*, 812 A.2d at 896-97.

[42] *See* Maginn and New Media II-C's Opening Br. 19-33; Jenzabar's Opening Br. 14-20, 44.

[43] *See, e.g.*, Jenzabar's Opening Br. 16; Maginn and New Media II-C's Opening Br. 19.

[44] Second Am. Compl. ¶¶ 45, 46, 48, 50, 52, 53, 55, 56, 57 (characterizing all nine claims as "Direct and Derivative").

9

they have pivoted to characterizing the claims as direct.[45] But "the manner in which a plaintiff labels its claims and the form of words used in the complaint are not dispositive."[46] Instead, "the court must look to all the facts of the complaint and determine for itself" the nature of the claim.[47]

Delaware courts apply the *Tooley* test to determine whether claims are derivative or direct in nature. The test "turn[s] solely" on two issues: "(1) who suffered the alleged harm (the corporation or the suing stockholders, individually); and (2) who would receive the benefit of any recovery or other remedy (the corporation or the stockholders, individually)[.]"[48] In making this assessment, I must examine the "body of the complaint and consider[] the nature of the wrong alleged and the relief requested."[49] If the plaintiff "can prevail without showing an injury to the corporation[,]" then the claim is direct.[50] If it cannot, then the claim is derivative.[51]

---

[45] Pls.' Opp'n to Maginn and New Media II-C 11 (arguing that the plaintiffs "properly plead[] direct claims[,]" and the defendants' "argument that the [plaintiffs] plead[] only derivative claims is an irrelevant distraction"); Pls.' Opp'n to Jenzabar 16 (same).

[46] *Hartsel v. Vanguard Gp., Inc.*, 2011 WL 2421003, at *16 (Del. Ch. June 15, 2011), *aff'd*, 38 A.3d 1254 (Del. 2012) (TABLE).

[47] *Dieterich v. Harrer*, 857 A.2d 1017, 1027 (Del. Ch. 2004).

[48] *Tooley v. Donaldson, Lufkin & Jenrette, Inc.*, 845 A.2d 1031, 1033, 1035 (Del. 2004).

[49] *Id.* at 1036 (citing *Agostino v. Hicks*, 2004 WL 443987, at *7 (Del. Ch. Mar. 11, 2004)); *see also Brookfield Asset Mgmt., Inc. v. Rosson*, 261 A.3d 1251, 1263 (Del. 2021).

[50] *Tooley*, 845 A.2d at 1036 (citing *Agostino*, 2004 WL 443987, at *7).

[51] *Id.* at 1039; *see also Brookfield Asset Mgmt.*, 261 A.3d at 1263-64.

### 1. The Alleged Harm Suffered

Under the first prong of *Tooley*, I must determine who suffered the alleged harm: the entity or investors individually.[52] The plaintiffs' core allegation is that Maginn breached his fiduciary duties by usurping corporate opportunities belonging to New Media II. He allegedly engaged in "churning transactions," failed to redeem the 2004 warrants, and diverted the 2012 warrants to New Media II-C.[53] Both sets of warrants were assets belonging to New Media II, not the personal property of its individual members.[54] As explained in *Deane*, "[a] claim that a director or officer improperly usurped a corporate opportunity belonging to the corporation is a derivative claim."[55]

The plaintiffs allege no separate harm to the members regarding this usurpation.[56] Any injury borne by the members is indirect, resulting "only because of their ownership" in New Media II and harms otherwise inflicted upon it.[57] At

---

[52] *Tooley*, 845 A.2d at 1033.

[53] Jenzabar's Opening Br. 16-17.

[54] *See Deane*, 2022 WL 16557974, at *3 (stating that the warrants at issue were "never intended to issue to . . . members individually but to an entity").

[55] *Id.* at *11; *see also* Tr. of Oct. 14, 2025 Oral Arg. on Defs.' Mots. to Dismiss (Dkt. 104) ("Hr'g Tr.") 4-5.

[56] *See Clifford Paper, Inc. v. WPP Invs., LLC*, 2021 WL 2211694, at *7 (Del. Ch. June 1, 2021). (holding that classically derivative claims might be direct where the plaintiff can demonstrate an "injury . . . independent of any alleged injury to the corporation").

[57] *In re J.P. Morgan Chase & Co. S'holder Litig.*, 906 A.2d 808, 819 (Del. Ch. 2005), *aff'd*, 906 A.2d 766 (Del. 2006).

best, the plaintiffs suggest that their stake in New Media II lost value because the entity was deprived of corporate opportunities.[58] Such loss—proportional to ownership—is the hallmark of a derivative claim.[59] It does not give rise to a separate, cognizable direct injury.[60]

The claims for waste, misappropriation, and tortious interference premised on the same conduct are also derivative.[61] Waste claims are "classically derivative" because squandering corporate assets injures the entity directly and the investors indirectly.[62] The purportedly wasted assets here belonged to New Media II, not to the individual members.[63] Likewise, the claims for misappropriation and tortious

---

[58] Pls.' Opp'n to Maginn and New Media II-C 8-9; Pls.' Opp'n to Jenzabar 12-13.

[59] *Anglo Am. Sec. Fund, L.P. v. S.R. Global Int'l Fund, L.P.*, 829 A.2d 143, 150 (Del. Ch. 2003) ("If the injury is one that affects all partners proportionally to their pro rata interests in the corporation, the claim is derivative.").

[60] *Cf. Deane*, 2022 WL 16557974, at *12 (noting that "[a]ny direct harm to the individual members . . . would have come later, when making individual investment decisions and from an absence of distributions").

[61] Second Am. Compl. ¶¶ 163-73 (waste claim); *id.* ¶¶ 174-79 (misappropriation claim); *id.* ¶¶ 197-203 (tortious interference claim). The remaining counts seek corollary relief (e.g., declaratory judgment, indemnification) flowing from these core harms. *See Brookfield Asset Mgmt.*, 261 A.3d at 1277-78 (explaining that if the core of a claim is derivative, it is treated as such and cannot be a "dual-natured" claim).

[62] *J.P. Morgan Chase*, 906 A.2d at 771; *see also Kramer v. W. Pac. Indus., Inc.*, 546 A.2d 348, 353 (Del. 1988) (characterizing corporate waste as a wrong "entirely derivative in nature" because "[a]ny devaluation of stock is shared collectively by all the shareholders, rather than independently by the plaintiff or any other individual shareholder").

[63] *See* Jenzabar's Opening Br. 19-20.

interference concern an opportunity to be gained by New Media, not by its members.[64]

### 2. The Benefit of Any Recovery

Under the second prong of *Tooley*, I must determine who would receive the benefit of any recovery.[65] Because the alleged harm—loss of corporate assets and opportunities—was inflicted on New Media II, the legal remedy logically belongs to the entity.[66] If New Media II were made whole, the value of the plaintiffs' interests would increase. But that benefit would accrue to them indirectly as equity holders on a pro rata basis.[67]

The plaintiffs resist this conclusion by pointing to the remedy awarded in *Deane*, where damages were distributed to the members of New Media II-B.[68] They assert that based on that remedy, the claims here must be direct.[69] This argument

---

[64] *See id.* at 20-21; *see also Kuroda v. SPJS Hldgs., L.L.C.*, 971 A.2d 872, 887 (Del. Ch. 2009) (dismissing a derivative claim for tortious interference because the plaintiff "failed to allege any harm to himself individually" separate from those borne by the company).

[65] *Tooley*, 845 A.2d at 1033.

[66] *See id.*; *see also* Maginn and New Media II-C's Opening Br. 21.

[67] *See CMS Inv. Hldgs., LLC v. Castle*, 2015 WL 3894021, at *7 (Del. Ch. June 23, 2015) ("If all of the . . . LLC members . . . are harmed and would recover pro rata in proportion with their ownership of the [company] solely because they are [interest holders], then the claim is derivative in nature."); *Brookfield Asset Mgmt.*, 261 A.3d at 1266 (stating that "the economic and voting power dilution that allegedly harmed the stockholders flowed indirectly to them in proportion to, and via, their shares" in the company).

[68] *Deane*, 2022 WL 16557974, at *29-31.

[69] Pls.' Opp'n to Maginn and New Media II-C 12, 17-18.

conflates the nature of the claim with the form of the remedy. In *Deane*, I held that the claims were derivative, but I exercised my equitable discretion to award a direct recovery to "prevent wrongdoers who misappropriate[d] corporate property from enjoying any aspect of the corporation's recovery."[70]

The availability of such a remedy does not turn a derivative claim into a direct one.[71] Whether damages should be funneled through the entity or distributed directly to investors is a remedial issue, distinct from the *Tooley* inquiry into the nature of the right being asserted.[72] Here, any recovery the plaintiffs might receive would be "pro rata in proportion with their ownership of [New Media II]."[73] The claims are thus derivative.[74]

---

[70] *Deane*, 2022 WL 16557974, at *29 (citing *In re Happy Child World, Inc.*, 2020 WL 5793156, at *2 (Del. Ch. Sept. 29, 2020)).

[71] *Id.* at *30.

[72] *See In re El Paso Pipeline P'rs, L.P. Deriv. Litig.*, 132 A.3d 67, 124-25 (Del. Ch. 2015) (observing that pro rata recovery may be appropriate in a derivative suit where "an entity-level recovery would benefit 'guilty' stockholders, but an investor-level recovery could be more narrowly tailored to benefit only 'innocent' stockholders" (citation omitted)), *rev'd on other grounds sub nom*, *El Paso Pipeline GP Co. v. Brinckerhoff*, 152 A.3d 1248 (Del. 2016); *Happy Child*, 2020 WL 5793156, at *2 (stating that pro rata recovery may be granted where "it would prevent wrongdoers who misappropriate[] corporate property from enjoying any aspect of the corporation's recovery").

[73] *CMS*, 2015 WL 3894021, at *7.

[74] *Id.*; *see also Tooley*, 845 A.2d at 1039.

14

## B. Standing

The plaintiffs' nine claims are derivative. As such, I next address whether the plaintiffs have standing to pursue their claims on New Media II's behalf.[75] This inquiry centers on the fact that New Media was canceled in 2017 and not revived before this lawsuit was filed.[76] That fact proves dispositive.

### 1. The Effect of Cancellation

"[A]s a preliminary matter, a party must have standing to sue in order to invoke the jurisdiction of a Delaware court."[77] Standing is assessed at the time a lawsuit is filed.[78] Where a party advances derivative claims, standing depends on the continued existence of the entity on whose behalf the suit is brought.[79]

---

[75] *See* Jenzabar's Opening Br. 15-16; Maginn and New Media II-C's Opening Br. 22-27.

[76] Maginn and New Media II-C's Opening Br. 25.

[77] *El Paso Pipeline*, 152 A.3d at 1256. The plaintiff bears the burden to show that they have standing. *See, e.g.*, *Doberstein v. G-P Indus., Inc.*, 2015 WL 6606484, at *6 (Del. Ch. Oct. 30, 2015).

[78] *See Albence v. Mennella*, 320 A.3d 212, 220 (Del. 2024); *SDF Funding LLC v. Fry*, 2022 WL 1511594, at *7 (Del. Ch. May 13, 2022) (describing derivative standing as "among the bedrock equitable doctrines" of the Court of Chancery).

[79] *See, e.g.*, Ct. Ch. R. 23.1(c)(1)(A)(i) (providing that one who does not have "standing to sue derivatively" is barred from "serv[ing] as a derivative plaintiff"); *cf. Parfi Hldg. AB v. Mirror Image Internet, Inc.*, 954 A.2d 911, 935, 940 (Del. Ch. 2008) (stating that a party who "was sent a check for [their shares] and no longer owns any shares" in a company has lost standing to sue).

15

Once a certificate of cancellation is filed, the entity "cease[s] to exist as a body corporate" or legal person.[80] The entity loses the capacity to sue or be sued.[81] By extension, a suit cannot be brought on its behalf.[82]

New Media II became defunct on December 28, 2017 when a certificate of cancellation was filed with the Delaware Secretary of State.[83] This suit was brought over six years later, on April 22, 2024.[84] The plaintiffs lack standing to sue on behalf of nominal defendant New Media II.[85]

### 2. The Proffered Exceptions

The plaintiffs raise three reasons why they believe standing was preserved despite New Media II's canceled status at the time of filing. First, they argue that

---

[80] *In re Krafft-Murphy Co.*, 82 A.3d 696, 710 (Del. 2013) (explaining that a dissolved entity ceases to exist and can only speak through a receiver (citation omitted)); *see also In re Reinz Wis. Gasket, LLC*, 2023 WL 3300042, at *2 (Del. Ch. May 8, 2023) (holding that upon the filing of a certificate of cancellation, an LLC's "legal existence ends").

[81] *See Matthew v. Laudamiel*, 2012 WL 605589, at *21 (Del. Ch. Feb. 21, 2012) (holding that derivative claims cannot be maintained on behalf of a canceled absent a receiver).

[82] *Reinz*, 2023 WL 3300042, at *2 ("When a certificate of cancellation is filed for an entity . . . its existence as [a] jural entit[y] cease[s]." (citation omitted)).

[83] *See supra* notes 20-21 and accompanying text.

[84] *See* Verified Compl. (Dkt. 1).

[85] *See Matthew*, 2012 WL 605589, at *21 (explaining that "after the filing of the certificate of cancellation, [derivative] claims must be brought in the name of the LLC by a trustee or receiver . . . or directly by the LLC or derivatively by its members *after reviving the LLC by obtaining revocation of its certificate of cancellation*" (emphasis added)); *see also Giordano v. Marta*, 1998 WL 227888, at *4 (Del. Ch. April 28, 1998) (holding that a plaintiff who was a stockholder of a dissolved corporation lacked standing to sue derivatively on its behalf); *Reinz*, 2023 WL 3300042, at *2.

16

their motion to nullify the certificate of cancellation cures any standing defect. Second, they contend that the certificate of correction retroactively revived New Media II. And third, they request a grant of equitable standing. These arguments are unavailing.

### a. The Concurrent Nullification Theory

The plaintiffs assert that they may simultaneously pursue nullification of the cancellation and press derivative claims "in conjunction with" that request.[86] Under this approach, the derivative claims would effectively be contingent on the court granting nullification. The plaintiffs cite *Matthew v. Laudamiel* in support of this sequence.[87]

This argument stretches *Matthew* too far. Although *Matthew* noted that derivative claims might be brought "in conjunction with" a nullification action, it did not endorse the procedure attempted here.[88] There, the court dismissed derivative claims because the plaintiffs neither revived the entity before filing nor sought nullification in their complaint. Similarly, the plaintiffs here failed to seek

---

[86] Pls.' Opp'n to Maginn and New Media II-C 26 (stating that "[t]here is no requirement that the [c]ourt must order nullification separately or before any plenary claims"); Pls.' Opp'n to Jenzabar 26 (arguing that "[c]ourts have made clear that a request for nullification need not precede a plenary action").

[87] 2012 WL 605589, at *21; *see* Pls.' Reply in Resp. to Jenzabar, Inc.'s Answering Br. (Dkt. 102) 1-2.

[88] *Matthew*, 2012 WL 605589, at *21; *see supra* note 85 (discussing *Matthew*).

nullification in their pleadings. They cannot rely on *Matthew* to manufacture standing through an ill-timed motion to nullify.[89]

The other cases cited by the plaintiffs are also inapposite. In *Metro Communications Corp. BVI v. Advanced Mobilecomm Technologies, Inc.*, for example, the plaintiff brought direct claims against the canceled entity, giving it standing to maintain the suit while seeking nullification, and pleaded facts supporting nullification.[90] But the plaintiffs here assert only derivative claims on behalf of a canceled entity, and thus lack standing to be in this court at all.

Because the plaintiffs did not plead a claim for nullification in conjunction with their derivative claims, they lacked standing when they filed this suit.

### b. The Retroactive Correction Theory

The plaintiffs also argue that their filing of a certificate of correction retroactively revived New Media II back to its date of cancellation in 2017.[91] If that

---

[89] *See Capone v. LDH Mgmt. Hldgs. LLC*, 2018 WL 1956282, at *7 (Del. Ch. Apr. 25, 2018); *see also Thor Merritt Square, LLC v. Bayview Malls LLC*, 2010 WL 972776, at *5 n.18 (Del. Ch. Mar. 5, 2010).

[90] 854 A.2d 121, 138, 143 (Del. Ch. 2004); Pls.' Opp'n to Jenzabar 26-27; Pls.' Opp'n to Maginn and New Media II-C 26-27. That case is further distinguishable because the plaintiff sought to revive a defendant entity to "ensure that the entity ha[d] sufficient funds to satisfy any judgment [the plaintiff] obtain[ed] against it," not to establish its own standing to sue. *Metro Commc'ns*, 854 A.2d at 165.

[91] Pls.' Opp'n to Jenzabar 13, 19; Pls.' Opp'n to Maginn and New Media II-C 10-11, 24-25.

were true, New Media II was never canceled and always had standing to sue. This argument fails for two reasons.

First, the certificate of correction was filed in March 2025—nearly a year after this action was initiated.[92] That belated attempt cannot retroactively cure the lack of standing at the lawsuit's outset.[93] Second, the plaintiffs cite no authority suggesting that a former member of a canceled entity can unilaterally "uncancel" it by filing a certificate of correction. At present, the certificate of cancellation has not been nullified; New Media II remains canceled.

### c.     The Equitable Standing Theory

Finally, the plaintiffs ask that the court grant them equitable standing to prevent a "complete failure of justice."[94] Equitable standing may be "judicially extended to address new circumstances."[95] But that relief is unavailable when "other avenues for relief exist for the [entity], even if only theoretical[.]"[96]

---

[92] Pls.' Opp'n to Maginn and New Media II-C 10-11; Dkt. 1.

[93] *Emps. Ins. of Wausau v. First State Orthopaedics, P.A.*, 312 A.3d 597, 607 (Del. 2024) (explaining that standing "assesses whether [the plaintiffs' personal] interest exists at the outset" of the litigation, and that the "[s]tanding doctrine functions to ensure . . . that the scarce resources of [this] court[] are devoted to those disputes in which the parties have a concrete stake" at the time the case is filed (citation omitted)).

[94] Pls.' Opp'n to Jenzabar 28 (citing *Schoon v. Smith*, 953 A.2d 196, 202 (Del. 2008)); Pls.' Opp'n to Maginn and New Media II-C 30-31 (same).

[95] *Schoon*, 953 A.2d at 204.

[96] *SDF Funding*, 2022 WL 1511594, at *9.

19

The plaintiffs could have sought to nullify the certificate of cancellation *before* filing this suit. No exigencies prevented them from doing so. Yet, they did not move for nullification until months after filing suit, by which time multiple motions to dismiss were pending.[97]

The 2017 certificate of cancellation was a public record that could have been obtained through a simple search of the Delaware Secretary of State's website. A diligent plaintiff would have run such a search before filing derivative claims, particularly given Maginn's prior correspondence stating that members' investments were "concluded."[98] Having neglected to exercise diligence to safeguard their rights, the plaintiffs cannot rely on equity to cure their lack of standing.[99]

\* \* \*

Because the plaintiffs' claims are derivative under *Tooley* and they have no standing to assert them on a canceled entity's behalf, this court lacks subject matter jurisdiction over the dispute.[100] "[S]tanding is a predicate to the [c]ourt's exercise

---

[97] This lawsuit was filed on April 22, 2024. Dkt. 1. The plaintiffs' original motion to nullify was filed on June 25, 2024. Dkt. 27. The defendants moved to dismiss during the intervening period. Dkts. 18, 21, 24, 26.

[98] *Entity Details, New Media Investors II, L.L.C.*, Dep't of State: Div. of Corps., https://icis.corp.delaware.gov/ (last visited Jan. 6, 2026); *see supra* note 19 and accompanying text.

[99] *E.g.*, 2 *Pomeroy's Equity Jurisprudence* § 418 (5th ed. 1941) ("Equity aids the vigilant, not those who slumber on their rights.").

[100] *Hall v. Coupe*, 2016 WL 3094406, at \*2 (Del. Ch. May 25, 2016); *see* Maginn and New Media II-C's Opening Br. 22-24.

of subject matter jurisdiction and must be addressed as a threshold issue."[101] Without it, I cannot proceed to the merits.[102] The plaintiffs cannot cure this defect by moving to nullify the cancellation months after filing suit.[103]

## III.  CONCLUSION

The motions to dismiss are granted for lack of standing.  Because this court lacked subject matter jurisdiction from the outset, I cannot adjudicate the mid-case motion to nullify.  The Complaint is dismissed without prejudice.

The plaintiffs must proceed in the proper sequence.  They may pursue a petition to nullify the certificate of cancellation.  If they succeed in reviving New Media II, they may then seek to press their derivative claims.[104]

---

[101] *In re Fitbit, Inc. S'holder Deriv. Litig.*, 2018 WL 6587159, at *2 n.4 (Del. Ch. Dec. 14, 2018) (citation omitted); *cf. Cont'l Auto. Sys., Inc. v. Nokia Corp.*, 2023 WL 1370523, at *6 (Del. Ch. Jan. 31, 2023) (noting that the plaintiff bears the burden of establishing jurisdiction).

[102] *See In re Coinmint, LLC*, 261 A.3d 867, 904 (Del. Ch. 2021) ("[I]n the absence of subject matter jurisdiction, a decision in this proceeding would be a nullity.").  The defendants ask that I rule on various merits issues, including whether the plaintiffs' claims are barred by laches.  *E.g.*, Hr'g Tr. 12-13.  Without subject matter jurisdiction, I lack the power to do so.  *See Nestor v. Poore*, 2023 WL 3736779, at *3 (Del. Ch. May 31, 2023) ("A challenge to subject matter jurisdiction is a gating exercise; if it succeeds, this [c]ourt should not address the underlying merits of claims not properly before it.").

[103] *See Emps. Ins.*, 312 A.3d at 611 (observing that "standing is assessed *at the time* a complaint is filed" (emphasis added)); *see also El Paso Pipeline*, 152 A.3d at 1256 (explaining that "a party must have standing to sue in order to invoke the jurisdiction of a Delaware court").

[104] *See RBC Cap. Mkts., LLC v. Educ. Loan Tr. IV*, 87 A.3d 632, 644 (Del. 2014) ("[A] dismissal for . . . lack of standing will not operate as a final decree that bars later claims."); Ct. Ch. R. 41(b) ("[A] dismissal for lack of jurisdiction . . . [does not] operate[] as an adjudication upon the merits.").

21